## LOGAN *v.* MATHEWS.

If a bailee for hire return the property in a damaged state, and give no explanation how the injury happened, the burden of proof, to show there was no negligence, is upon him.

The hire of a carriage on a Sunday, by a son, to visit his father, creates a legal contract.

A promise to pay where there is no legal obligation, if made in ignorance of rights, or under surprise, will not bind; but if the right be uncertain, *contra*.

In error from the Common Pleas of Allegheny county.

*Sept.* 22. Assumpsit for the damages done to a horse and buggy, hired by Mathews to Logan, with a count on a promise to pay for the damage to the buggy.

The plaintiff's evidence proved the hiring on Sunday morning; and that at night the buggy was brought back by the defendant very much broken. It was taken to the coach-maker's, who testified that the parties came there together; and defendant said he had broken it; it fell off a bridge, and the horse fell on top of it; and that he would pay for the repairs.

The defendant gave evidence that the injury was occasioned by the horse backing over a bridge; and that on the day he hired the buggy he had visited his father in the country.

The defendant's points were, that plaintiff was bound to show negligence; the contract was illegal, being made on Sunday; and that, under the evidence, the plaintiff could not recover.

PATTON, J., instructed the jury, that if a bailee returned the hired property in a damaged condition, and failed or refused, at that time or subsequently, to give any account of how the injury occurred, the law would presume negligence. The second point he negatived; and on the third, left the question of a promise to the jury; adding, if the jury believed, under the instructions of the court, there was no legal liability, his promise, through ignorance or surprise, would not bind him; if it were a matter of doubt, he would be bound by it.

*T. Hamilton*, for plaintiff in error, cited, 2 Kent's Com. 586; Dean *v.* Keate, 3 Camp. N. P. R. 5; Newton *v.* Pope, 1 Cow. Rep. 109; Millon *v.* Salisbury, 13 Johns. 211; Mitchel *v.* Smith, 1 Binn. 118; Maylin *v.* Coulon, 4 Dall. 298; Coulon *v.* Anthony's Executors, 4 Yeates, 24; Biddis *v.* James, 6 Binn. 321; Badgley *v.* Beale, 3 Watts, 263; Hassinger *v.* Solms, 5 Serg. & Rawle, 8; Tompkins *v.* Saltmarsh, 14 Serg. & Rawle, 275.

*McCandless* and *McClure*, contrà, cited, 1 Bell's Law of Scotland, 454, note 6; Story on Bailments, sects. 411, 414.

*Sept.* 27.   COULTER, J.—The plaintiff in error alleges that the court did not answer his first proposition; and whether they did or not was the question principally argued at the bar.

But the point seems to be substantially answered by the observations of the court to the jury; and in such manner as that they could hardly have failed to understand the court as instructing them that it was necessary for the plaintiff to prove that the buggy was broken in consequence of the negligence of the defendant. The charge, though brief, is somewhat overloaded with generalities on the law of bailment, which have no immediate application to the case; and what seems to be a sufficient answer to the defendant's point is prefaced by an observation from the court, of which the defendant principally complains; that is, "that when the bailee returns the property in a damaged condition, and fails, either at the time or subsequently, to give any account of the matter, in order to explain how it occurred, the law will authorize a presumption of negligence on his part. But when he gives an account, although it may be a general one, of the cause, and shows the occasion of the injury, it then devolves on the plaintiff to prove negligence, unskil-

fulness, or misconduct." There is some kind of evidence, that the defendant admitted he was in fault ; it is in the testimony of Kerr, the coach-maker, who says that Logan came with Mathews to his shop, and said he had broken the buggy ; it fell off the bridge, and the horse fell on top of it. He said he understood from defendant that he would pay for repairing the buggy. There was no other evidence that he had ever said any thing to Mathews, or in his presence, about the manner or occasion of breaking the buggy. The court was therefore not in error in adding the qualification in relation to the obligation of the bailee to give an account, because I apprehend that to be the law. The books are extremely meagre of authority on this subject of the *onus probandi* in cases of bailment. But reason and analogy would seem to establish the correctness of the position of the court below. All persons, who stand in fiduciary relation to others, are bound to the observance of good faith and candour. The bailor commits his property to the bailee, for reward, in the case of hiring, it is true ; but upon the implied undertaking that he will observe due care in its use. The property is in the possession and under the oversight of the bailee whilst the bailor is at a distance. Under these circumstances, good faith requires, that if the property is returned in a damaged condition, some account should be given of the time, place, and manner of the occurrence of the injury, so that the bailor may be enabled to test the accuracy of the bailee's report, by suitable inquiries in the neighbourhood and locality of the injury. If the bailee returns the buggy, (which was the property hired in this case,) and merely says, " Here is your property, broken to pieces," what would be the legal and just presumption ? If stolen property is found in the possession of an individual, and he will give no manner of account as to the means by which he became possessed of it, the presumption is that he stole it himself. This is a much harsher presumption than the one indicated by the court in this case. The bearing of the law is always against him who remains silent when justice and honesty requires him to speak. It has been ruled, that negligence is not to be inferred unless the state of facts cannot otherwise be explained ; 9 English Jurist, 907. But how can they be explained if he in whose knowledge they rest will not disclose them ? And does not the refusal to disclose them justify the inference of negligence ? Judge Story, in his treatise on Bailments, sec. 410, says that it would seem that the burden of proof of negligence is on the bailor, and that proof *merely* of the loss is not sufficient to put the bailee on his defence. The position that we

are now discussing, however, includes an ingredient not mentioned by Judge Story, and on which it turns; that is, the refusal or omission of the bailee to give any account of the manner of the loss, so as to enable the bailor to shape and direct his inquiries and test its accuracy. Judge Story says there are discrepancies in the authorities. In the French law, as stated by him, sect. 411, the rule is different; and the hirer is bound to prove the loss was without negligence on his part. And he cites the Scottish law to the effect, that if any specific injury has occurred, not *manifestly* the result of accident, the *onus probandi* lies on the hirer to justify himself by proving the accident. That would be near the case in hand, because the injury here was not manifestly the result of accident, and the hirer did not even explain or state how the accident occurred. The case of Ware *v.* Gay, 11 Pick. 106, seems to have a strong analogy to the principle asserted. It was there ruled that where a public carriage or conveyance is overturned, or breaks down, without any *apparent* cause, the law will *imply* negligence, and the burden of proof will be on the owners to rebut the presumption. The *primâ facie* evidence arises from the fact that there is no apparent cause for the accident. And in the case in hand, there was no apparent cause; nor would the hirer give any account of the cause. We think, therefore, there was no error in adding to the answer the qualification or explanation which we have been considering. It is often not only proper, but necessary, to qualify the direct answer to a general proposition to prevent the jury from being misled. We perceive no error in the answer to the first point; which, although not so precisely adapted and located as an answer to that point as it might have been, is substantially a response to all its exigencies.

There is nothing in the second error assigned. As the court very properly observed, the visit to his father by the defendant was discharging a filial duty, which nothing in the law hinders or forbids. There was nothing whatever in the evidence that showed the journey was a trip or excursion of pleasure; and even if the case in 2 Miles is good law and authority here, it is not in point.

The third error assigned relates to the promise of the defendant to pay for the repairs of the buggy; and we think no error is apparent in the instruction of the court on that subject. But the answer of the court was as favourable to the defendant as he was authorized to require, to wit: that if the promise was made in ignorance of his rights, and by surprise, when in fact he was not responsible, he would not be bound by it. But if his liability on

the law and facts was only doubtful, he would be bound. The compromise of a doubtful right or liability has been always held to be a good consideration for a promise; Perkins v. Gay, 3 Serg. & Rawle, 331.

The defendant requested the court to charge the jury, that if they believed the evidence, the plaintiff could not recover; and their declining to do so is assigned for error. The court were not bound to give that instruction. Evidence consists of facts sworn to, and fair and reasonable presumptions and inferences arising from these facts; and the jury is the proper tribunal to make those presumptions and inferences, and not the court. Thus if the facts stated in a special plea do not amount to a justification, yet if issue be joined thereon, and if the facts be proved as stated, it is error in the judge to instruct the jury that the facts so proved do not, in law, maintain the issue; Otis v. Walker, 9 Cranch, 339. The defendant might have demurred to the evidence, though that is not common in our practice; and by so doing he would admit every justifiable inference which a jury might make, and the court would make those inferences. Besides, and above all, there was conflicting evidence which could not be withdrawn from the jury.

We see nothing in the instructions of the court, and the errors assigned, of sufficient magnitude to reverse the judgment.

. Judgment affirmed.