# Watts *versus* Cummins.

1. It is esteemed unfair to select a single sentence or two in a charge and insist on it as error, without reference to other portions which explain its meaning, or exhibit its bearing.

2. Where parties have presupposed facts or rights to exist as the basis of their contracts, which did not, such contracts made in mutual mistake will be relieved against.

3. The principle in such cases is, that the party has been misled to his hurt, in trusting to the truth of the other in a material matter, where he has had no opportunity of satisfying himself of its reality, or has been prevented from taking the steps necessary to verify the assertion.

4. When a party asks a chancellor to restrain the inequitable use of a legal title, he must show such facts as entitle him to rescind on the ground of either mistake or fraud.

5. The defendant who had given a note for a share in a tract of oil land defended, on the ground of misrepresentation. The judge below, after referring to the evidence and the excitement in relation to such land, charged: "If Watts, the defendant, was seized with this oil fever, like multitudes of others, and was induced to subscribe by representations that Campbell, the agent of the owners of the land, believed to be true, a persuasion that was shared by the best informed men who visited and examined the territory, he cannot allege that he was deceived and defrauded by such representations. But if you can find evidence that Campbell made these representations knowing them to be false, and that he made them by the directions and authority of the owners, and for the purpose of obtaining Watts's note, and that Watts signed the paper and gave the note in consequence of these false representations, you will be warranted in rendering a verdict for the defendant." *Held*, not to be error.

6. Miles *v.* Stevens, 3 Barr 21, explained.

May 18th 1868. Before Thompson, C. J., Agnew and Sharswood, JJ. Strong and Read, JJ., absent.

Error to the Court of Common Pleas of *Mifflin county*: Of May Term 1868, No. 50.

This was an action of debt, by John M. Cummins against Samuel Watts, commenced January 1st 1867. The plea was payment with leave, &c. The suit was on a promissory note made by the defendant, and dated August 16th 1865, for $1000, payable six months after date, to the order of C. K. Davis, J. H. McFarlane and D. W. Woods, who endorsed it to the plaintiff.

The payees of the note were owners of a tract of land in Venango county, supposed to be oil land. The Kishacoquillas Oil Company was organized for purchasing and developing it. The valuation put upon it was $60,000, which was divided into sixty shares of $1000 each; the defendant became the purchaser of one of these shares, for which he gave the note in suit. The defence was that the note was obtained by fraud arising from misrepresentation as to the character of the land, and that the plaintiff held it either as the agent of the payees or with notice of the fraud.

The defendant called Robert Campbell, who testified : "There

[Watts *v.* Cummins.]

was a meeting at Belleville, Mifflin county, for the purpose of organizing the company; the land was supposed to contain oil; it adjoined the Franklin reservation; the payees of the note were there; they said it was as good oil territory as was in Venango, that there was a flowing well within half a mile of where they intended to sink a well; that there were a number of paying wells on the Franklin and river side of the property. Davis said that an 'oil smeller' had engaged to find oil on the land or forfeit $5000, and that there was a flowing well within 800 feet of the land; the defendant said in consideration of what had been said by the parties, Davis particularly, he would take a share; a meeting was organized, and Watts took the share; defendant and other persons gave their notes after the meeting was organized. The parties spoke of several wells; Woods said if there was no oil, the land was worth, on account of coal and timber, all they were to pay; Woods and Davis said they had been on the land." Witness further testified that the land was worthless for wood, farming, &c.

R. D. Campbell testified for defendant: "He had been authorized by the payees to sell stock, and to say there were good paying wells along French creek and the Allegheny river; a 20 barrel well near the line, and a 40 barrel well (Lee well) across the river, and that the 'Hoover farm,' &c., was near, showing that there was oil territory all around; witness told defendant these things, and also that there were 20 cords of wood to the acre, which, put into market at the price at which it was selling, would produce $150 per acre for the land after deducting expenses; that there was a good show of coal; that the wood and coal would pay $60,000; that there was 'a good show' for oil; witness got the information principally from Davis; he carried around a subscription paper which he got from McFarlane and Davis; Watts signed it before the meeting at Belleville, on condition that he would not be bound till he gave his note; witness believed the representations which he made to be true, from having seen wells pumping, and from what Davis told him."

There was other testimony corroborative of R. D. Campbell's; also further testimony that there was little or no coal or wood or oil; of the distance from other wells being greater than represented; the small value of the land without oil; and generally testimony for the purpose of sustaining the defence.

The plaintiff called D. Bates, who testified: He had been employed with R. D. Campbell to obtain subscriptions for the oil company. At the meeting at Belleville, Woods, after speaking of the timber and coal, said he attached no value to the wood except as it might be used in operating for oil, that no one could tell about coal until it was opened out; witness said, so far as coal, timber and land, and the oil smeller were concerned, he would give

[Watts *v.* Cummins.]

nothing for them; if they did not get oil the property was not worth two cents to them. After the discussion, Woods said if any one was dissatisfied he could withdraw. Witness had been on the property and saw indications of oil, and that he considered the land good oil territory.

Dr. G. V. Mitchell testified that he had been at the meeting at Belleville, and was asked as to his knowledge of the land; he said he thought it would cut 25 or 30 cords per acre, that wood was worth $10 to $15 per cord, that he thought it a considerable item in the value of the land, and that it was as fair oil territory as any of the adjacent land that he had visited; he had found what was regarded by experienced men as surface indications; spoke of producing wells at no great distance.

The plaintiff gave further evidence of the same character in rebuttal of the defendant's case. The testimony on each side was very voluminous.

The defendant submitted seven points: four related to the ownership of the note and Campbell's agency. The others were:—

5. The representations of Woods, Davis and McFarlane, or either of them, made to the defendant, respecting the value of this land as oil territory, and the value of its coal and timber, are the representations and declarations of all of them, whether made in the presence of each other or not.

6. If the jury believe that Woods, Davis and McFarlane, or either of them, or their agents, falsely and fraudulently represented to Mr. Watts that there was a flowing well near one corner of this land, and a pumping well, of at least 20 barrels, near another corner, that there were paying wells close to this land, between it and the Allegheny river, and also between it and the town of Franklin, and that the coal and timber on the land were worth $60,000, and these representations were the chief inducement to the purchase, then there can be no recovery, and the verdict must be for the defendant.

7. If the jury believe that the representations made to the defendant by Woods, Davis and McFarlane, or either of them, or their agents, as to the value of the coal and timber on this land, and its value as oil territory, were material inducements to the purchase, and the said representations were untrue, and the defendant had no opportunity of seeing the land, but relied on the said representations, then there can be no recovery in this case, even if the party who made them believed they were true when he made them.

These points the court (King, P. J. of the Sixteenth Judicial District) answered:—

" The propositions contained in the seven points submitted by the counsel for the defendant are conceded by their opponents, and we therefore adopt them.

[Watts v. Cummins.]

"If you find the facts on which these propositions are based, you are invited by the plaintiffs to adopt the conclusions desired, and we do not feel at liberty to gainsay it."

In his general charge, after recapitulating the evidence, and stating the questions raised in the case, Judge King said:—

["If Mr. Watts, the defendant, was seized with this oil fever, like multitudes of others, and was induced to subscribe by representations that Douglas Campbell, assuming him to be the agent of the owners of the land, believed to be true, a persuasion that was shared by the best informed men that visited and examined the territory, he cannot allege that he was deceived and defrauded by such representations.

"This is a point of some importance, and we express this opinion that it may be corrected if we have committed an error. But if you can find any evidence that Douglas Campbell made these representations knowing them to be false, and that he made them by the direction and authority of the owners of the land, and for the purpose of obtaining Mr. Watts's note, and that Mr. Watts signed the paper and gave the note in consequence of these false representations, you will be warranted in rendering a verdict for the defendant.        *        *        *        *        *

"We conclude by saying that if on a full examination of all the evidence, the defendant was as much under the influence of the oil fever as the payees on the note, and entered into this scheme of speculation aware of the risks, and satisfied to take his chances along with his associates, he must be considered to be in the same boat with them, having the same hopes, and exposed to the same hazards. Having the same chances of success, he ought to run the same risks of loss. But if this scheme was concocted in fraud, and the defendant was entrapped into becoming one of the partners in a hopeless venture and fraudulently induced to give this note, your verdict ought to be for the defendant."]

The verdict was for the plaintiff for $1144.17.

The defendant took a writ of error, and assigned for error that the court did not give distinct answers to his points; also the part of the charge included in brackets.

*Doty, Speer & McKee*, for plaintiff in error.—Contracts may be rescinded for mistake alone: Graham v. Pancoast, 6 Casey 89; Nace v. Boyer, Id. 99; Meade v. Webb, 1 Brown's P. C. 308; Evans v. Llewellyn, 2 Brown's Ch. C. 150; Murray v. Palmer, 2 Sch. & Lefr. 474; Reynell v. Sprye, 8 Hare 222; Brightly's Eq. §§ 48, 49, 220; Hawk v. Greensweig, 2 Barr 295; Brawdy v. Brawdy, 7 Id. 158; Horbach v. Gray, 8 Watts 492; Jenks v. Frietz, 7 W. & S. 201; Geiger v. Cook, 3 Id. 270; Miles v. Stevens, 3 Barr 21; Fisher v. Worrall, 5 W. & S. 478; Pennock v. Tilford, 5 Harris 456; 1 Story's Eq. § 140; Sanborn v. Stetson,

[Watts *v.* Cummins.]

2 Story C. C. R. 481; Hough *v.* Richardson, 3 Id. 659; Doggett *v.* Emmerson, Id. 700.

*Alexander, Parker & Reed,* for defendant in error.—Where facts are unknown to both parties, or are in their own nature doubtful, equity will not interfere: 1 Story's Eq. §§ 150, 151; Fisher *v.* Worrall, *supra;* Jackson *v.* Wetherill, 7 S. & R. 480; Kirk *v.* Nice, 2 Watts 367; Fraley *v.* Bispham, 10 Barr 320; 1 Parsons on Cont. 471; Cook *v.* Grant, 16 S. & R. 211.

The opinion of the court was delivered, May 27th 1868, by

AGNEW, J.—It is always esteemed unfair to select a single sentence or two in a charge and insist on it as error, without reference to other portions, which explain its meaning or exhibit its bearing. We must also look at the state of the case before the jury to determine its effect. The portion of the charge assigned for error in this case, unexplained by its context, and the subject of contest, would appear to be inconsistent with the subsequent answers to the defendant's points. The payees of the note in suit were the owners of a tract of 350 acres of land in the Venango county oil region, and undertook to raise a company for its development. Messrs. Campbell and Bates were employed to raise it. Campbell procured the defendant's subscription for the share for which this note was subsequently given. It was conceded by both sides that the subscription was conditional, and not binding until the defendant gave his note at the organization of the company. The defence to the payment of the note rested on the ground of misrepresentation, as to the land being oil territory, and as to the value of the timber and coal upon it. There was much evidence that at the meeting to organize the company the character of the land was fully discussed. Woods, one of the owners, informed the persons present, among whom was Watts, the defendant, that the wood and coal were only valuable so far as they might assist in developing the territory for oil, and if oil were not found the land would be of no value; and also that the subscribers, if dissatisfied, might withdraw and refuse to give their notes. There was evidence also that explanations were made of the actual surroundings of the property as to adjacent oil-wells, and that no confidence was to be placed in the offers of "oil-smellers," as they were termed—persons pretending to discover oil by means of the divining rod. The defendant himself called on Dr. Mitchell, who had been on the land, to state his knowledge of it, which he did. Bates, one of the alleged agents in raising the company, said publicly in the meeting, that if they did not get oil he would not give two cents for the investment. The effect of all this evidence, if believed by the jury, and its weight appears to be preponderating, was to strip the case of all misrepresenta-

tion of mere matters of fact, leaving the question of its being good " oil territory" to rest upon opinion, and the representations made upon this point to be mere expressions of belief. But the defendant, still relying on his defence founded on alleged misrepresentation of the tract in reference to its timber, coal and surroundings, went to the jury, therefore, upon two aspects of the case; one upon the representation that it was good oil territory, and the other on the representation as to the timber, coal and adjacent oil-wells. Hence the plaintiffs' counsel conceded, and the court affirmed, all the positions contained in the defendant's seven points, covering the entire ground of the representations made in reference to the visible character and circumstances of the land. The adoption of these points left nothing undisposed of relating to representations of the agents or owners of the mere facts of the case.

But the existence of oil within the bowels of the tract was unknown to all parties and was ascertainable only by actual development, an expensive and tedious process. It was a subject of mere speculation and risk. It was not pretended that Campbell, the agent whose misrepresentations were the ground of defence, asserted the existence of oil as a fact known to him, but that he said it was " oil territory"—land lying within the oil region which from its circumstances would be likely to produce oil. This it is plain could be no more than an opinion, and yet it is well known that such probabilities have been the subjects of much dealing, commanding almost fabulous prices; while no one has thought himself defrauded in case of ill success, who was not imposed upon by the misrepresentation of actual facts affecting the sale. That this opinion as to the character of the land as oil territory was the true subject of the portion of the charge assigned for error and was so understood by the jury, is made obvious by the current of the case and is likewise shown by the remarks of the judge immediately preceding it. He refers to the testimony of Campbell (himself the witness who proved them) that the representations he made were honest and true—also to the great number of witnesses testifying to the character of the land as *oil territory*, and that all *so believed* who knew it. He remarks upon the credulity of men when influenced by a passion for speculation, and then begins the excepted portion by saying, " If Mr. Watts, the defendant, *was seized with the oil fever* like multitudes of others." Now clearly all this characterized the representations meant by the judge when he continued the sentence by saying, " and was induced to subscribe by representations that Douglas Campbell (assuming him to be the agent of the owners of the land) believed to be true, a persuasion that was shared by the best informed men that visited and examined the territory, he cannot allege that he was deceived and defrauded by such repre-

sentations." Evidently the judge referred to those representations of belief as to this land being oil territory which the agent had expressed in common with others, and this rescues the charge from the allegation of inconsistency between this portion and the answers to the defendant's points; which were left to stand as the instruction of the court as to all misrepresentations of fact, whether relating to the wood, coal, proximity of flowing wells or other circumstances.

It remains to consider whether this portion of the charge as thus understood was erroneous. It is alleged to be contrary to the doctrine of Miles *v.* Stevens, 3 Barr 21; Fisher *v.* Worrall, 5 W. & S. 478; Geiger *v.* Cook, 3 W. & S. 270, and other cases. Black, C. J., in Pennock *v.* Tilford, 5 Harris 459, said that the court was not prepared to reaffirm Miles *v.* Stevens in the length and breadth of all the doctrines there laid down. It is not necessary however to criticize that case. One branch of it is put upon the fact that under the instruction of the court, the jury found actual misrepresentation as to the alleged harbor at the mouth of Elk creek. The second branch is founded upon the mutual mistake of both parties, as to facts not problematical or of mere risk, but which both parties believed to be certain to take place—to wit, that Congress would appropriate money to improve the harbor, and that the state legislature would extend the canal to that point; and that this expectation failed to be realized. That case was dissimilar to the present. Both parties there proceeded upon the certainty of the fact that the mouth of Elk creek would be made a good harbor and be the termination of a great public work, thus rendering the adjacent land eligible as the site of a large city. The case is put on this expectation as the basis of the contract, and not on the basis of taking the risk, or a chance of success in a matter merely problematical. So in Fisher *v.* Worrall there was a statement of the actual existence of the iron ore on the vendor's tract and of its quality. And in all the cases cited or examined, it is the misrepresentation of a fact or mutual misapprehension as to something believed to be true which was the ground of equitable relief. Hence it is said that he who would avail himself of his own misrepresentation, even where it is unintentional, is as much open to an imputation of fraud, as if its falsity had been known to him: Tyson *v.* Passmore, 2 Barr 124; Fisher *v.* Worrall, 5 W. & S. 483. And where parties have presupposed facts or rights to exist as the basis of their proceeding, which did not, such contracts made in mutual mistake will be relieved against: Bishop *v.* Reed, 3 W. & S. 265.

But in these cases the principle which pervades them is, that the party setting up the misrepresentation had been misled by it to his hurt. He has trusted to the truth of the other in a material matter, where he has not had the opportunity of satisfy-

[Watts *v.* Cummins.]

ing himself of its reality, or has been prevented from taking the steps necessary to verify the assertion. But this is not the nature of the transaction before us, taking it for granted as established by the verdict, that there was no misrepresentation of any material fact. The existence of oil in the tract was unknown to both parties; and its being there, as was well known to each, could only be ascertained by an expensive and laborious experiment. This development was a part of the purpose of raising the company. Had Campbell expressed the strongest belief of the existence of oil in the tract as an absolute certainty, still the defendant knew it was but a matter of mere belief, and uncertain. It was opinion only, no matter how confidently expressed. It is plain he had no right to rely upon it as an assured fact, but must still experiment to find it out. How then could he have relied on the statements of Campbell, so as to be misled to his injury? He knew as well as the vendors that they were bargaining about a matter altogether problematical, of which he must necessarily take the risk, unless he had guarded against it by a covenant. But the demand for a covenant in risks of this nature would break off the bargain in most cases. The parties dealt together with open eyes, and on the footing that the subject of the risk was not only unknown, but then inaccessible to both. To say, therefore, that such a bargain when otherwise fair, is fraudulent or so inequitable that it ought to be rescinded, would be to announce a principle that would cut off all contracts upon subjects that cannot be rendered certain before the bargain is closed. There may be contracts made upon subjects so wholly groundless that they are evidently caused by delusion or imposition, but this cannot be said to be the case in reference to the purchase of oil lands upon which millions have been made as well as lost.

The attitude of the defendant is not that of one resisting a bill for specific performance. The plaintiff here rests on his legal right to recover upon the note, while the defendant defends on the ground of a failure of consideration. He therefore asks the interposition of equity to restrain the plaintiff from an inequitable use of his legal title. In such a case he must show such facts as entitle him to rescind on the ground of either mistake or fraud.

This disposes, in effect, of all of the assignments of error. The judgment is therefore affirmed.

THOMPSON, C. J., dissented.