## Jeffers et al. *v.* Babis, Appellant.

Argued April 27, 1931. Before FRAZER, C. J., SIMP-
SON, KEPHART, SCHAFFER and MAXEY, JJ.

*Abraham Wernick,* of *Evans & Wernick,* for appel-
lant.

*Walter Thomas,* with him *Henry. M. Stevenson,* for
appellee.

OPINION BY MR. JUSTICE SCHAFFER, June 27, 1931:

The experienced and able trial judge who had the par-
ties before him in this case, and heard them testify, con-
cluded that defendant, a real estate dealer and agent,
had tricked the plaintiffs, who were somewhat unsophis-
ticated, out of the sum of $3,000, due to them in a real
estate transaction which he handled for them as their
agent. Our study of the record has not convinced us
that this view was erroneous.

Plaintiffs had secured an option to purchase a hotel at Wildwood, New Jersey, for $35,000 and had entered into an agreement for its sale for $41,000 provided they could place a third mortgage thereon for the purchaser for $15,000. They entered into negotiations with defendant for this purpose and he verbally agreed with them, so they testified, to procure the mortgage from the Republic Investment & Finance Company, of which he was an officer, if he was paid a commission of $2,500. He said this agreement was reduced to writing and such a paper was produced by him, signed by plaintiffs. It was undated. His version was that it was executed on October 3, 1925, two days after the contract of sale between the plaintiffs and the purchasers from them was signed, on October 1, 1925. The plaintiffs' story was that this writing was not prepared by defendant and signed by them until about January 15, 1926, a few days after the sale had been consummated and defendant had in his possession the $6,000 cash proceeds of the sale, the closing up of which had been delayed by reason of defects in the searches.

The written agreement of sale between plaintiffs and the purchasers of the property, dated October 1, 1925, which was prepared by defendant or at his instance, provided that the third mortgage was to be placed by the Republic Investment & Finance Company (although it was not so placed but in fact was taken by the defendant himself) and that "the sum of $6,000, being the amount of the proceeds to come from this settlement, shall be paid to the order of J. Babis [defendant] who is a party to this agreement, and he is to make distribution."

Accordingly, when the parties met on January 13, 1926, and settlement was made for the property, the $6,000 was turned over to Babis. Plaintiffs testified that on their way home from the settlement defendant told them that he could not pay them the money to which they were entitled because the check which he had re-

ceived at the settlement had "to go down to New Jersey and go through the bank" and requested them to return in two days; that a day or so later they saw defendant, and he then said to them he could not immediately turn over their share of the money because the Republic Investment & Finance Company had been compelled to make a large outlay for a property and that he would prepare an agreement for them to sign, which he proceeded to do; that he then produced to them the undated agreement, which he got them to sign in a great hurry, without reading, representing that he had to fill an engagement. However, he gave them copies of it which they read on their return home. In subsequent interviews with defendant, they expressed their dissatisfaction with this paper and he offered them $1,500 in full settlement, which they refused. He did not divulge to them until this interview that he himself had taken the mortgage.

He subsequently told the plaintiffs that they would have to wait a year for the rest of the money coming to them, and when they had done so and approached defendant again, he told them they would get nothing from the deal, but was finally prevailed upon to give them $250, representing the amount they had paid for the option and the expenses which they had incurred.

This undated agreement sets forth that it is agreed between plaintiffs and Babis "acting as agent for the Republic Investment & Finance Company" that Babis is to place the $15,000 mortgage for the term of one year from October 1, 1925, that he is to receive from the settlement the sum of $6,000, of which amount $3,000 is to be paid to plaintiffs when the mortgage of $15,000 is fully paid and satisfied and in the event that it should be necessary to foreclose the mortgage or if there should be any legal proceedings on it, the $3,000 to be paid to plaintiffs shall be forfeited to the mortgagee or *"his* nominee," "and the said *Jacob Babis* shall not be held responsible of any legal procedure which shall be lodged

against *him,* or *his* nominee. And the said [plaintiffs] shall forever waive their right, title and interest in this agreement to the said *Jacob Babis,* or *his* nominee." It was also provided that $500 of the $6,000 should be kept by Babis to make settlement of a claim for commissions by an agent who had negotiated the sale. Nothing was said in this paper about the $2,500 commission which was to be paid to Babis for procuring the mortgage. This, however, would be the amount remaining in his hands if he paid plaintiffs the $3,000 and the agent's commission of $500.

Babis stands upon this writing in resisting plaintiffs' claim. The mortgage has been foreclosed and he avers that under the terms of the agreement the $3,000 payable to plaintiffs was forfeited to him. This might be true if the paper was executed on October 3, 1925, prior to the consummation of the sale and the placing of the mortgage, but not so if the agreement was signed afterwards, when he had the $6,000 in his pocket, as plaintiffs aver. In that event, as the court below says, there was no consideration moving to the plaintiffs, as he, Babis, had already performed all his undertakings under the agreement and they were giving up to him the money to which they were entitled for nothing. When account is taken of the fact, if true, that Babis did not tell plaintiffs until after the agreement was signed that he and not the corporation had taken the mortgage, the agreement itself lends color to the thought that it was not prepared and signed until after the transaction of the sale had been closed. While it recites that Babis, acting as agent for the Republic Investment & Finance Company, is to place the mortgage, when it comes to the provisions covering the forfeiture of the money in the event of foreclosure or legal proceedings, it provides that the money shall go to "the mortgagee, or *his* nominee" and that "the said Jacob Babis shall not be held responsible of [for] any legal procedure which shall be lodged against *him,* or *his* nominee. And the said [plaintiffs]

shall forever waive their right, title and interest in this agreement to the said *Jacob Babis,* or *his* nominee." Had the agreement been prepared in October, 1925, when it was thought the corporation would take the mortgage, it is not likely it would have been thus phrased. The trial judge submitted to the jury the question as to when the agreement was signed as the controlling one in the case. They found a verdict in plaintiffs' favor for $5,-500, thus putting the stamp of their approval upon the verity of plaintiffs' testimony. This verdict represented the $3,000 and the commission of $2,500 for placing the mortgage, which the court instructed the jury they might allow the plaintiffs as usurious interest which the defendant himself had exacted. In disposing of the motion for a new trial, the court came to the conclusion that the latter sum could not be recovered and reduced the verdict to $3,000.

The defendant contends that, even if the written contract was made in January of 1926, it was still binding on the plaintiffs, as, since the agreement is under seal, it needs no special consideration and the seal imports consideration. If plaintiffs' story was true, then there was no actual consideration for their surrender of the right to the money and the mere symbol of the seal could not give validity to a paper which so palpably overreached them. Two cases dealing with assignments under seal have laid down the principle which we here invoke. In Hancock's App., 34 Pa. 155, the question arose as to the validity of an assignment under seal of a bond secured upon real estate. In disposing of the contention that the assignees should have been compelled to offer proof of a purchase for valuable consideration, it was said (page 156) : "The assignments duly executed under seal, were sufficient to pass the title, and must be held to import a valuable consideration. Had there been any impeachment, however slight, of the fairness of the assignments, we would have required full proof of consideration." Similarly in Twitchell v. McMurtrie, 77

Pa. 383, the plaintiff in a scire facias sur mortgage was a trustee suing as assignee of the mortgage executed by defendant and her deceased husband. Defendant pleaded that the assignment had been made for a nominal consideration only, and that the assignment was in violation of an agreement between the mortgagors and the original mortgagees that the mortgage would not be assigned. In denying the plaintiff's contention that the consideration for the assignment, being under seal, could not be looked into, we declared (page 387) : "It was said in Hancock's Appeal, (supra), that while, in the absence of any evidence to the contrary, an assignment under seal imports a valuable consideration, yet the assignee may be required to give full proof of consideration if there be any evidence, however slight, to impeach the bona fides of the transaction. The grounds of defense asserted here were amply adequate to give to the defendant the right to a trial by jury, and to entitle her to call upon the plaintiff to prove the circumstances under which the assignment of the mortgage was made."

Moreover, as suggested by the trial court in its opinion, defendant's position is not improved by his stand on the question of consideration for the contract under seal, since plaintiffs were at liberty to prove, and by the binding force of the verdict must be taken to have proved, failure of consideration on the part of defendant (Yard v. Patton, 13 Pa. 278, 284), who under the terms of the agreement, "acting as the agent for the Republic Investment & Finance Company, [was] to place a mortgage of $15,000"; and this had already been done by defendant acting for himself alone under the prior oral agreement.

The case was one for decision by the jury to whom it was submitted in a fair and understandable charge which could have left them in no doubt as to what the real questions for their determination were. Our review of all the assignments of error and a careful considera-

tion of appellant's argument has not convinced us that the conclusion reached was unwarranted.

All the assignments of error are overruled and the judgment is affirmed.