## Commonwealth Trust Company General Mortgage Investment Fund Case.

Argued March 27, 1947. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

reargument refused September 17, 1947.

*John A. Metz, Jr.,* with him *Ben Paul Brasley, John A. Metz, Brasley, Rubin, Balter & Cole, Metz & Metz* and *Aronson & Levy,* for unsuccessful bidder, appellant.

*Albert C. Hirsch,* with him *Weil, Hirsch & Shumaker,* for Commonwealth Trust Company of Pittsburgh, appellee.

*Leon Savage,* for successful bidder, appellee.

OPINION BY MR. JUSTICE PATTERSON, July 3, 1947:
Where, after competitive bidding in open court upon a petition by a fiduciary for leave to sell real estate at private sale, the court enters an order approving the sale to the highest bidder, and, subsequently thereto, an agreement of sale is executed by the fiduciary and the highest bidder, containing an additional provision reserving to the fiduciary the right to rescind and sell to a subsequently higher offeror, is that agreement binding upon the highest bidder and is it an agreement within the intendment of the Act of 1945, P. L. 944, 20 PS section 818, which provides, *inter alia,* "except as otherwise agreed by the parties"?

Commonwealth Trust Company of Pittsburgh, appellee, in its capacity as a trustee, petitioned the Orphans' Court for leave to sell a certain piece of real estate at private sale to one Gabriel G. Rubin for $46,000. On February 6, 1946, competitive bidding was had before the court, and H. J. Shapiro, appellant, made the highest bid, to wit, $61,000. The court accepted his bid, made an order approving the sale and authorizing the fiduciary to execute a deed upon terms and conditions contained in the order. Subsequently thereto, appellant and the trust company executed an agreement of sale embodying the terms of the order, but including therein the following clause: "It is the understanding of the parties hereto that this Agreement covers property in a Trust Estate and that the Vendor in its fiduciary capacity is legally obliged to accept any higher or better offer which it receives prior to the approval of the within sales agreement by the Orphans' Court of Allegheny County, Pa. If the Vendor receives a higher or better offer than the terms of the within Agreement, it has the right to revoke the within Agreement at any time prior to the consummation of the within sale and to refund the payment made on account of the purchase price without further liability to the Vendee."

On March 12, 1946, five days after the date fixed by the court for settlement, the trust company received a higher offer from the Atlanta Realty Corporation. The following day appellee presented to the Orphans' Court a supplemental petition requesting the court to set aside its order of February 6, and approve a sale to the subsequent offeror. H. J. Shapiro, appellant, filed an answer to said petition requesting that the petition be dismissed and that appellee be ordered to deliver to him a deed for the property pursuant to the court's order of February 6.

The court, relying upon the unconstitutionality of the Act of 1945, supra, set aside its prior order of February 6, and entered a new order approving the sale to the Atlanta Realty Corporation. This appeal is from

the decree of the court below dismissing exceptions to said decree and approving the sale to said Realty Corporation. In its opinion, the court stated: "Our position has been that the Act of May 24, 1945 (No. 374) which, if valid, prevents setting aside a sale for an inadequate price, is unconstitutional and cannot be given effect in this court."

Appellant contends that the additional provisions in the agreement of sale executed subsequent to the order of the court approving the sale to him were without consideration. Appellee contends that the decree of the court below, having been made prior to this Court's opinion in *Brereton Estate*, 355 Pa. 45, 48 A. 2d 868, the court below properly set aside its prior order of February 6, 1946.

Appellee's contention is entirely without merit. The Act of May 24, 1945, supra, upheld as constitutional by this Court in *Brereton Estate*, supra, was operative from the effective date prescribed by the legislature. The instant case must, therefore, be viewed in that light. In that case this Court said (page 57): "Accordingly, in the words of the opinion filed below, when, 'after competitive bidding, the court ordered a private sale . . . for $27,850.00, secured by a certified check, whereupon the ancillary executor was directed to make a deed for the property described in the petition,' the contract was complete. All the terms had been agreed upon and the contract had been approved by the court. The court's approval of the contract passed the title to the property in the absence of fraud, accident or mistake subject, of course, to the payment of the consideraton. Prior to the Act, title did not pass until the delivery of the deed: Demmy's Appeal, 43 Pa. 155, 168. After that, the court, consistently with the Act of May 24, 1945, could not set aside the contract merely because the appellee made a substantially higher offer."

Fraud, accident or mistake in the negotiations and proceedings culminating in the order of February 6, 1946, do not appear in this record. Equitable title passed to

appellant upon entry of the court's order approving the sale by the fiduciary. When, subsequent thereto, the fiduciary procured appellant's signature to an agreement of sale, not in conformity with the order of the court, new promises therein made could only be valid and enforceable if supported by legally sufficient consideration. There was no consideration to support the added provision giving to the fiduciary the power to rescind prior to the consummation of the sale and to accept a higher and better offer.

"Where a legal obligation exists, a cumulative promise to perform it, unless upon a new consideration, is a nullity. Such promise adds nothing to and takes nothing from the original obligation. . . . A promise cannot be conditioned on a promise to do a thing to which a party is already legally bound . . .": *Wimer v. Overseers of the Poor of Worth Township,* 104 Pa. 317, 320; *Erny v. Sauer,* 234 Pa. 330, 334, 83 A. 205. " 'A promise to do what the promisor is already bound to do cannot be a consideration, for if a person gets nothing in return for his promise but that to which he is already legally entitled, the consideration is unreal' ": *Quarture v. Allegheny County,* 141 Pa. Superior Ct. 356, 363, 14 A. 2d 575. "Doing what one is already legally obliged to do is not good and sufficient consideration": *Murray v. Prudential Insurance Co.,* 144 Pa. Superior Ct. 178, 187, 18 A. 2d 820; *Tradesmen's National Bank v. Cummings Bros. Co.,* 306 Pa. 280, 282, 159 A. 452. The court's approval of the sale to appellant operated to vest in him equitable title to the property. The contract was complete and appellee was under legal duty to convey legal title to him in accordance with the court's decree. This was the only act which was promised by the fiduciary in the subsequent agreement. When, therefore, appellee secured appellant's signature to an agreement of sale not in conformity with the court's decree, it undertook to do nothing more than it was already legally obligated to do.

"One of the tests of consideration is whether the promisee, at the instance of the promisor, has suffered

any detriment, or whether in return for the promise he has done something that he was not bound to do or has promised to do some act or has abstained from doing something. . . . If the promisee has suffered any detriment, however slight, or, though he has suffered no real detriment, if he has done what he was not otherwise bound to do, in return for the promise, he has given a consideration . . .": *Mikos v. Kida*, 314 Pa. 561, 563, 172 A. 101. Clearly the promisee, the fiduciary, had done nothing nor has it promised to do anything which it was not already legally bound to do. There was no consideration to support the additional terms incorporated into the agreement of sale.

It should also be noted that the provision of the agreement in question was stated to be based upon facts which did not exist. The agreement provided that the vendor "in its fiduciary capacity is legally obliged to accept any higher or better offer which it receives prior to the approval of the within sales agreement by the Orphans' Court. . . ." The fiduciary was not then legally obligated to accept any higher offer. Nor was it required to secure approval of the sales agreement. That approval had already been secured and the written agreement was to have been executed in accordance therewith.

In the absence of any evidence to the contrary, an agreement under seal imports consideration. When, however, the agreement itself reveals the insufficiency or lack of consideration, the rule will not be applied to the detriment of the promisor. The promisee will not be permitted to secure an advantage and thereby deprive the promisor of that to which he is legally entitled. Cf. *Jeffers v. Babis*, 304 Pa. 281, 287, 155 A. 878.

The legislature is presumed to have intended that words used in a statute shall be construed according to their common and approved uses: *Statutory Construction Act of 1937*, P. L. 1019, 46 PS section 33. The use of the words "except as otherwise agreed by the parties" cannot be interpreted in a manner which would dis-

regard long settled principles of contract law, and validate and make enforceable agreements lacking sufficient consideration. We need not indulge in speculation as to what the legislature might have intended. The word "agreed" has a precise and well settled meaning in our jurisprudence. There is no expressed legislative intention that it should be given any other meaning. The phrase cannot refer to promises *nudum pactum*. The legislature intended promises supported by legally sufficient consideration.

The decree of the court below is reversed and the record remanded with instructions to dismiss the supplemental petition and reinstate the prior order of February 6, 1946. Costs to be paid by appellee.

---

CONCURRING OPINION BY MR. CHIEF JUSTICE MAXEY:

I concur in the opinion filed by Justice PATTERSON because of my respect for the realities of the situation. Before the legislature passed the Act of May 24, 1945, P. L. 944, it was an obligation of a fiduciary to accept a higher offer for the sale of trust property after the court's approval of the first sale provided the sale had not been consummated. When after H. J. Shapiro on February 6, 1946 made the "highest bid" of $61,000 and the court accepted his bid and authorized the fiduciary to execute a deed for the property upon certain terms and conditions, both vendor and vendee believed (*as the agreement of sale stated*) that "the Vendor in its fiduciary capacity is legally obliged to accept any higher or better offer which it receives prior to the approval of the within sales agreement by the Orphans' Court of Allegheny County, Pa." This agreement was signed by the Commonwealth Trust Company and its seal attached and also by H. J. Shapiro. After Shapiro's name appeared the word "(Seal)". This agreement also set forth that the Vendor "has the right to revoke the within Agreement at any time prior to the consummation of the

within sale and to refund the payment made on account of the purchase price without further liability to the Vendee."

On March 12, 1946, the Commonwealth Trust Company received an offer $1,000 greater than the price it agreed to accept from Shapiro. On March 22, 1946, the Orphans' Court over the objections of Shapiro again took competitive bids for the sale of the real estate and on that day entered an order revoking the previous order of February 6 (which had authorized the sale of the property to Shapiro) and accepting the bid of George Schwartz in the sum of $66,000, and authorizing the Commonwealth Trust Company to execute a deed for the property to the said George Schwartz or his nominees.

Shapiro made prompt objections to all these proceedings which he alleges were taken in violation of his rights under the agreement of sale which he and the Trust Company had entered into on February 6, 1946.

Under the provisions of the Act of May 24, 1945, P. L. 944, Shapiro is entitled to the property and the fiduciary is not relieved of his obligation to perform his contract "except as otherwise agreed by the parties." Appellee says that Shapiro did "otherwise agree" by a contract in writing which bore the word "(Seal)" after his signature. Appellee contends (and the dissenting opinion upholds this view) that since Shapiro's agreement is under seal he cannot avail himself of the plea that he received no consideration for his agreement to a conditional promise, when under the Act of 1945 he had a clear right to the purchase of the property.

The legal significance of a seal to a signature has often been stated by this court. See *Piper v. Queeney*, 282 Pa. 135, 127 A. 474. *Failure* of consideration is a defense to an action on a sealed instrument; *want* of consideration is not.

But there is another principle of law which in my judgment rules this case. This principle is well stated by Chancellor Kent in Gillespie v. Moon, 2 Johnson's, N. Y. Chan. 585, where he said: "I have looked into most,

if not all, of the cases on this branch of equity jurisdiction, and it appears to me to be established, and on great and essential grounds of justice, that relief can be had against any deed or contract, in writing, founded in mistake or fraud. The mistake may be shown by parol proof, and the relief granted to the injured party, whether he sets up the mistake affirmatively, by bill, or as a defense. . . . it appears to be the steady language of the English chancery, for the last seventy years, and of all the compilers of the doctrines of that court, that a party may be admitted to show, by parol proof, a mistake, as well as fraud, in the execution of a deed or other writing."

That this "contract in writing" was founded on a mistake is evident in the very language of the contract itself, as quoted in the first paragraph of this opinion, because the parties *stated* that they *understood* it was the *obligation* of the fiduciary "to accept any higher or better offer", etc. Under the Act of 1945 the vendor had *no such legal obligation* and no such "right to revoke the within agreement". Both the vendor and vendee, however, *honestly believed* in the existence of that right. So did the Orphans' Court of Allegheny County, thereby becoming the fountain head of the mistake which is the foundation of this contract; this mistake gives Shapiro the right to interpose an equitable defense to its enforcement. President Judge TRIMBLE, speaking for the Allegheny County Orphans' Court, said in his opinion filed on March 28, 1946: "Our position has been that the Act of May 24, 1945 (No. 374), which, if valid, prevents setting aside a sale for an inadequate price, is unconstitutional and cannot be given effect in this court."

Presumably, both vendor and vendee knew from the time they appeared in this case before the Allegheny County Orphans' Court that that court regarded the Act of 1945 as unconstitutional, and therefore, as a law, non-existent. Up to that time, that Orphans' Court was the highest tribunal which had spoken as to the Act's constitutionality. Accepting, *as a fact,* which the vendor and vendee manifestly did, the court's erroneous conclu-

sion that the Act of 1945 had not superseded the old law on the subject, both parties entered into the contract of February 6, 1946 *under a mistake of fact as to their respective rights and obligations.* That an action for the rescission of a written contract or an equitable defense to its enforcement, may be based upon a mistake of fact made or entertained by the parties when they entered into the contract has been universally recognized. Even if the mistake which was the genesis of the execution of the contract was one of law, equity will relieve the parties if they can be restored to the status quo. Justice MITCHELL said in *Fink v. Farmers' Bank et al.,* 178 Pa. 154, 167, 35 A. 636: ". . . equity has so far contented itself with relief in cases of mutual mistake of legal rights where it was possible to restore both parties to status quo." 17 C. J. S. 501, section 145, makes this statement: "To the general rule that mistake of law is no ground for relief there are certain exceptions or apparent exceptions. Mistake as to particular private rights is treated as mistake of fact or as a mixed mistake of law and fact. Private rights of property, although they are the result of rules of law, or depend on rules of law applied to the construction of legal instruments, are usually considered matters of fact." (Citing cases).

In *Logan v. Mathews,* 6 Pa. 417, it was held that a promise to pay where there is no legal obligation, if made in ignorance of rights, or under surprise, will not bind, In *Watts v. Cummins,* 59 Pa. 84, this court speaking through Justice AGNEW held that where parties have presupposed facts or rights to exist as the basis of their contracts, which did not, such contracts made in mutual mistake will be relieved against. In *Moore v. Moore,* 255 Fed. 497, the U. S. Circuit Court of Appeals, Third Circuit, said: "A promise made where there is no legal obligation, and made, whether through ignorance of rights or misconception of the law, to avoid something that cannot happen, lacks valid consideration, and is not binding. Logan v. Mathews, 6 Pa. 417; Offutt v. Parrott, 1 Cranch, C.C. 154, 18 Fed. Cas. 606, No. 10,453; Maull

v. Vaughn, 45 Ala. 134; Grimes v. Grimes, 89 S.W. 548, 28 Ky. Law Rep. 549."

In 28 L.R.A. (N.S.) 840 appears the following: "The rule that equity will not interfere to cancel a contract made through mistake of law applies to a mistake as to the general law, and not to a case where a party is mistaken as to the effect of existing circumstances in relation to his private rights. Toland v. Corey, 6 Utah, 392, 24 P. 190; Marshall v. Lane, 27 App. D.C. 276; Bonney v. Stoughton, 122 Ill. 536, 13 N.E. 833; Cook v. Sumner Spinning & Mfg. Co., 1 Sneed, 698; Waggoner v. Waggoner (Va.) 30 L.R.A. (N.S.) 644, 68 S.E. 990; Cooper v. Phibbs, 15 Week. Rep. 1053, 22 Eng. Rul. Cas. 870.

"And a mistake by a party as to his antecedent existing legal rights, as distinct from a mistake as to the legal import of the act done, furnishes a ground for equitable relief from the consequences of the mistake in cases in which the mistake can be rectified without injury to the rights of others. Re McFarlin (Del.) 75 A. 281; Wyche v. Greene, 16 Ga. 57. *In such case the mistake is really one of fact.* Marshall v. Lane, 27 App. D.C. 276." (Italics supplied).

In *Gefken v. Graef,* 77 Ga. 340, where a husband and wife entered into a marriage settlement by which property belonging to her was conveyed to a trustee for the joint use of herself and husband and such children as she might have, and at her death to go to her children, both of them believing that such deed was necessary to prevent the husband's marital rights from attaching, and *both being ignorant of the law then existing,* which secured to her all her property, equity has jurisdiction of a bill to set aside and cancel the marriage settlement, and a verdict and judgment canceling and setting it aside is binding on the parties and their privies until set aside in some of the modes provided by law.

In *Osincup v. Henthorn,* 46 L.R.A. (N.S.) 174, 89 Kan. 58, 130 P. 652, it was held the mistake of the wife and mother of a decedent in regard to the law of descents and distributions of a state other than that of their

residence, which led to the apportionment and transfer (by agreement) of land owned by the decedent at the time of his death to the mother, when, under the statute, the widow was entitled to all of it, is a mistake of fact against which equity will relieve, unless some principle of equity bars the granting of such relief. In *Warder et al. v. Tucker,* 7 Mass. 449, it was held where one, through a mistake of the law, acknowledges himself under an obligation, which the law will not impose upon him, he shall not be bound thereby. In *Hunt v. Rousmanier's Administrators,* 21 U. S. 174, Chief Justice MARSHALL, speaking for the United States Supreme Court, said: "Although we do not find the naked principle, that relief may be granted on account of ignorance of law, asserted in the books, we find no case in which it has been decided, that a plain and acknowledged mistake in law is beyond the reach of equity."

In *Reggio v. Warren,* 207 Mass. 525, 93 N. E. 805, a bill was filed by a beneficiary under a testamentary trust to cancel a release of his claim against the estate in consideration of a note for the sum he was entitled to in cash on the ground of a mutual mistake of the parties as to the validity of the transaction. The Supreme Judicial Court of Massachusetts in entering the decree prayed for said, inter alia: "These defendants also contend that the mistake set forth in the bill was a pure mistake of law, for which no redress can be given. . . . it is now well settled . . . that a mistake as to the title to property or as to the existence of certain particular rights, though caused by an erroneous idea as to the legal effect of a deed or as to the duties or obligations created by an agreement, was really a mistake of fact and not strictly one of law, and so did not constitute an insuperable bar to relief."

Kerr on "Fraud and Mistake", 4th Edition, 467, says: "When therefore a man, through misapprehension or mistake of the law, parts with or gives up a private right of property or assumes obligations upon grounds upon which he would not have acted but for such mis-

apprehension, a court of equity may grant relief if, under the general circumstances of the case, it is satisfied that the party benefited by the mistake cannot in conscience retain the benefit or advantage so acquired."

Williston on Contracts, Revised Edition, Volume 5, pp. 4329-30, section 1540, states: "the term 'mistake' might well be used inclusively to cover all kinds of mental error, however, induced. . . . It is usual, however, to use the term 'mistake' as including only such mistake as is made without misrepresentation by the other party to the transaction; and the word is so used in this treatise."

In section 1544, p. 4333, Williston states: "It is often said that a mistake, in order to justify rescission, must relate to the intrinsic nature of the bargain. . . . It seems a better mode of statement to say that a mistake vitally affecting a fact or facts on the basis of which the parties contracted renders their contract voidable by an injured party. That is, where the parties assumed a certain state of facts to exist, and contracted on the faith of that assumption, they should be relieved from their bargain if the assumption is erroneous. . . . This is a sound principle of justice, and should be applied without any further question as to whether the mistake is intrinsic or extrinsic, or whether it affects identify or qualify."

The Restatement of Contracts, pp. 961-62, section 502, states: ". . . where parties on entering into a transaction that affects their contractural relations are both under a mistake regarding a fact assumed by them as the basis on which they entered into the transaction, it is voidable by either party if enforcement of it would be materially more onerous to him than it would have been had the fact been as the parties believed it to be, except (a) where the welfare of innocent third persons will be unfairly affected, or (b) [not applicable here] (c) [not applicable here]"

Under Comment a appears the following: "Where both parties assume the existence of a certain state of facts as the basis on which they enter into a transaction,

the transaction can be avoided by a party who is harmed, if the assumption is erroneous."

In *Heacock et al. v. Fly,* 14 Pa. 540, where the contracting parties acted under a misapprehension as to the law, this court held as follows: "Justice requires that the contract should be rescinded. Their mistake was mutual. . . ." We said in that case that "the parties were led into error by the conveyancer." In the instant case it may be said that the parties "were led into error" by the court below in treating the Act of 1945 as invalid.

When this vendor and vendee met, the vendor said *in effect,* "I am agreeing to sell you this property for $61,000 but *the law is such.* that I will be obliged to rescind my agreement if I receive a higher offer before the sale is consummated and I wish to make that fact clear to you so that you will not accuse me of duplicity in not carrying out this agreement." The vendee replied *in effect,* "It is my understanding that *under the law* you may be compelled to treat this agreement you just signed as a nullity." The vendee Shapiro then signed and "sealed" the agreement so that the vendor would be assured that he, Shapiro, understood the situation and would not later accuse him of bad faith if the property should be sold to a higher bidder. The contract was really nothing more than a memorandum which parties sometimes make so as to avoid a future misunderstanding as to what their agreement was. In this case both the vendor and vendee acted under a mistake as to their rights and obligations because of the Orphans' Court's treating the Act of 1945 as unconstitutional. That mistake was the genesis of this "contract". For this court to enforce a contract so palably founded on a mutual mistake would be inequitable and would justify the reproach often cast on courts which permit the immolation of justice on the alter of technicalism.

It is true that a seal "imports consideration" but it is equally true that it does *not import unchallengeable validity* to a contract *founded on a mutual mistake.* The old common law doctrine that a seal imports considera-

tion has so often worked injustice that more than half the states in the Union have abolished the doctrine and it has also been greatly modified in England [1] and in this country by the allowance of equitable defenses [2] to actions based on sealed instruments.

In my opinion no court which has the power (as Pennsylvania courts have) to recognize equitable de-

---

[1] Under English law if a surety's obligation was under seal, the only mode of resisting the creditor's claim on the ground that the creditor had indulged the primary debtor in the matter of time was by applying to a court of equity for an injunction, for he had no legal defense to the creditor's action. *Davey v. Prendergrass*, 5 B. & Al. 187. The English statute of 1854, introducing pleas on equitable grounds, now gives the surety an equitable defense at law.

[2] *Williston on Contracts*, Vol. 1, section 218, lists 27 states in the Union in which the distinction between sealed and unsealed written contracts is in terms abolished. In other states it is enacted only that sealed contracts shall be presumed in the absence of contrary evidence to have been made for sufficient consideration. In 1935, New York specifically abolished this presumption of consideration arising from the fact that an instrument is sealed.

In a scholarly article in the *Harvard Law Review*, Vol. 22, p. 97, Professor James Barr Ames said, inter alia: "There is a certain analogy between the ethical development of the law and that of the individual. As early law is formal and unmoral, so the child or youth is wont to be technical at the expense of fairness."

He then discusses the "formal and unmoral attitude of the common law in dealing with contracts under seal." He cites the fact that in 1835 "the defendant's defense to an action upon a bond, that it had been obtained from him by fraudulent representations, was not allowed, Lord Abinger saying: 'You may perhaps be relieved in equity, but in a court of law it has always been my opinion that such a defense is unavailing when once it is shown that the party knew perfectly well the nature of the deed which he was executing.'"

After citing other examples of injustices resulting from "the formal and unmoral attitude of the common law in dealing with contracts under seal", Professor Ames said: "In all these cases, however, equity sooner or later gave relief."

In the closing paragraph, Professor Ames said: "It is obvious that the spirit of reform which during the last six hundred years has been bringing our system of law more and more into harmony with moral principles has not yet achieved its perfect work."

fenses [3] would permit the enforcement of a contract so clearly founded on mutual mistake as is the contract

---

[3] In another article by Professor Ames on the subject "Specialty Contracts and Equitable Defences", 9 Harvard Law Review 49, this learned law writer states: "By statute or judicial innovation, as we have seen, the jurisdiction of the common-law courts has been greatly extended, except in the Federal Courts of this country, in the matter of defences to actions on formal contracts. In all cases, where, formerly, a defendant was obliged to apply to equity for relief against an unconscionable plaintiff, he may now defeat his adversary at law."

He points out that the common law in England "prior to 1767, did not permit the obligor to defeat the obligee by showing that the instrument [sealed] was in fact given for an illegal or immoral purpose. The only remedy of the obligor was a bill in equity for an injunction against the action at law. Such bills were very common. But the common-law rule was changed in 1767 by Collins v. Blantern, 2 Wils. 341, which sanctioned the legal defence of illegality. The opinion of the court delivered by WILMOT, C. J., bears the unmistakable signs of an innovation. 'We are all of opinion that the bond is void *ab initio* by the common law, by the civil law, moral law, and all law whatever.' And yet the learned judge was unable to cite a single authority. 'I should have been extremely sorry if this case had been without remedy at common law. Est boni judicis ampliare jurisdictionem.'"

Professor Ames adds: "As fraud and illegality were not legal defences to an action upon a specialty, no one will be surprised to find that the rule was the same as to failure of consideration . . . How completely ethical considerations were ignored by the common-law judges in dealing with formal contracts, is shown by the numerous cases deciding that a covenantor who had paid the full amount due, but without taking a release, must, nevertheless, pay a second time, if the obligee was unconscionable enough to bring an action on the speciality."

He also states that at common law accord and satisfaction was not a defense to an action on a covenant. In his article he cites many other examples of justice being denied at common law by a rigid adherence to the doctrine that if an instrument in writing had been "formally executed" by the parties attaching seals to it, no defense to it could be recognized except duress and as to that defense Professor Ames says: "It is quite possible that the anomalous allowance of the defence of duress at common law may be due to some forgotten statute."

now before us. As Chancellor Kent said in *Gillespie et ux. v. Moon,* supra, "It would be a great defect in what Lord Eldon terms the moral jurisdiction of the court, if there was no relief for such a case." [4]

I concur in the reversal of the decree of the court below.

*Blackstone,* Lewis's Ed., Book 2, section 306, refers to the fact that "the Normans, a brave but illiterate nation, at their first settlement in France, used the practice of sealing only, without writing their names, which custom continued when learning made its way among them, though the reason for doing it had ceased . . . At the conquest, the Norman lords brought over into this kingdom their own fashions; and introduced waxen seals only, instead of the English method of writing their names and signing with the sign of the cross."

In a footnote under section 305 appears this quotation from Mechem on Agency, 68: "While this rule (of sealing) is firmly established it is highly technical in its nature and confessedly stands upon very narrow ground. The whole theory of the solemnity of a seal is totally unsuited to the business methods of the present day, and the constant tendency of courts and legislatures is to ignore the distinctions formerly founded upon its use."

[4] In *Snell v. Insurance Co.,* 98 U. S. 85, 91, the United States Supreme Court, quoting from 1 Story, Eq. Jur., section 138 e and f, said, "the rule that an admitted or clearly established misapprehension of the law does create a basis for the interference of courts of equity, resting on discretion, and to be exercised only in the most unquestionable and flagrant cases, is certainly more in consonance with the best considered and best reasoned cases upon the point, both English and American." See also *Griswold v. Hazard,* 141 U. S. 260.

*10 R. C. L.,* p. 311, section 53; says: "it has been held that if one, through mistake as to his legal rights, acknowledges himself under an obligation, which the law does not impose, he is not bound thereby." Citing *Warder v. Tucker,* 7 Mass. 449; 5 Am. Dec. 62, in which case the highest court in Massachusetts stated: "although the defendant, when he first received notice from the plaintiffs of the protest of the bill, considered himself as liable by law to pay the plaintiffs the amount of it; yet his ignorance of the law shall not bind him to fulfill an engagement made through mistake of the law." *23 R. C. L.,* p. 325, section 18, declares: "A study of the adjudged cases justifies the statement that the distinction between errors of law and errors of fact is of much less importance in the reformation of contracts than is commonly supposed; that it has had very little practical effect upon the decisions of the courts."

DISSENTING OPINION BY MR. JUSTICE HORACE STERN:

The Act of May 24, 1945, P. L. 944, provides that ". . . when the court shall hereafter approve a contract of a fiduciary requiring approval of court, neither inadequacy of consideration, nor the receipt of an offer to deal on other terms shall, *except as otherwise agreed by the parties,* relieve the fiduciary of the obligation to perform his contract or shall constitute ground for any court to set aside the contract, or to refuse to enforce it by specific performance or otherwise." (Italics supplied.) Thus the statute permits the parties to agree, if they so desire, that the fiduciary shall be relieved of his contractual obligation upon receiving a higher offer. Even if, therefore, as the majority opinion asserts, the approval by the court of Shapiro's bid operated to vest in him an equitable title to the property, he could, under the Act, agree to a modification of his rights. That he did in fact so agree appears from the provision in his contract with the Trust Company that "If the Vendor receives a higher or better offer than the terms of the within Agreement it has the right to revoke the within Agreement at any time prior to the consummation of the within sale and to refund the payment made on account of the purchase price without further liability to the Vendee."

The majority opinion states that there was no consideration for Shapiro's consent thus to convert the Trust Company's obligation into a conditional option. But the agreement was under seal and, if there is any principle of law firmly established in Pennsylvania, it is that a seal imports consideration: *Conrad's Estate,* 333 Pa. 561, 3 A. 2d 697; *Yulsman v. DuBois,* 346 Pa. 310, 30 A. 2d 323; *Rynier Estate,* 347 Pa. 471, 32 A. 2d 736; *Independent Coat Co. v. Michalowski,* 349 Pa. 349, 37 A. 2d 518; *Central-Penn National Bank of Philadelphia v. Tinkler,* 351 Pa. 123, 40 A. 2d 389. In *Conrad's Estate,* it was said (p. 563, A. p. 699): "It is well settled that a seal *imports* consideration. This is more than

a mere presumption; the seal takes the place of proof of consideration and in the absence of fraud makes the promise enforceable without it. The defense of *want* of consideration is not available in an action on a sealed instrument." The sole exception to this rule is where there is evidence of *fraud;* only in that event will proof of consideration be required: *Conrad's Estate* (p. 563, A. p. 699); *Yulsman v. DuBois* (p. 312, A. p. 324). In the present case there is no suggestion of fraud; the most that can be said is that the parties misunderstood the law, but a mistake of law, whether unilateral or bilateral, does not relieve parties of their contractual obligations. The majority opinion cites *Jeffers v. Babis,* 304 Pa. 281, 155 A. 878, but there the court pointed out that the defendant was guilty of *fraud,* thus bringing the case within the recognized exception; moreover the plaintiff in that case proved *failure* of consideration on the part of the defendant which, as distinguished from *want* of consideration, is a permissible defense in the case of *every* contract.

My disagreement with the majority does not depend solely on the fact that the agreement between Shapiro and the Trust Company was under seal. The agreement itself reveals that there was consideration for whatever concessions Shapiro made therein. The order of the orphans' court accepting his bid did not pretend to cover all the terms of the sale; on the contrary it provided for a "new agreement" to be entered into by the parties, and, as finally executed, the agreement contained numerous provisions not embodied in the court's order. To pick out now a single clause and assert that there was no consideration for that particular covenant violates in my opinion, an elementary principle of contract law, namely, that *all* of the clauses of a written agreement must be regarded as constituting consideration *for one another.*

I would affirm the decree of the court below.