## Double Dollar B. & L. Assn., Appellant, *v.* Kushin et al.

Argued December 4, 1931. Before FRAZER, C. J., WALLING, SIMPSON, KEPHART, SCHAFFER, MAXEY and DREW, JJ.

*Herman D. Levinson,* with him *Barnet Lieberman,* for appellant.

*John F. E. Hippel,* of *Edmonds, Obermayer & Rebmann,* for appellee, was not heard.

PER CURIAM, January 5, 1932:

Plaintiff entered judgment upon confession by warrant of attorney contained in defendants' bond given as surety for the payment of a loan made to a third party. A rule to open the judgment being made absolute, the issues raised were submitted to the court below, sitting without a jury, on a stipulation of facts agreed to by the parties. Plaintiff appeals from judgment entered for defendants.

The facts pertinent to this appeal are as follows: Plaintiff building and loan association, on April 24, 1923, loaned Robert Davis $10,000 upon his bond secured by a second mortgage on real estate and collateral of fifty shares of plaintiff's building association stock of the 14th series, and as further collateral, defendants' bond as surety, for $5,000, to save plaintiff harmless from all loss, etc., "by reason of the failure of Robert Davis, his heirs......or assigns to promptly pay the dues, interest, taxes, etc.......until such time as said Robert Davis......or assigns shall have by payments of dues on said fifty shares of stock or by payments on account of the principal of said mortgage loan of ten thousand dollars, reduced the net amount of the indebtedness to said association to the sum of five thousand dollars; then the above obligation to be void......"

On October 31, 1923, Robert Davis conveyed the real estate covered by defendants' bond to J. Henry Hinchcliffe, subject to a first mortgage and plaintiff's second mortgage of $10,000, and also assigned to Hinchcliffe the fifty shares of stock which plaintiff held as collateral on the second mortgage. Six years later (October, 1929), being in default under the mortgage, Hinchcliffe

proposed and the plaintiff association agreed to cancel the fifty shares of collateral building and loan stock in the 14th series, applying the withdrawal value of these fifty shares to the reduction of the loan and the payment of dues in arrears, and to accept thirty shares of plaintiff association's stock, in its 40th series, as collateral for the balance due on the mortgage, thus reducing the amount of monthly payments from that time on. This was done without notice to or consent of defendants.

Defendants contend, and the court below held, that in cancelling the fifty shares of stock originally held as collateral for the loan, upon which the mortgagor was required to pay $50 monthly toward the mortgage, and substituting thirty shares upon which the monthly payments were only $30, the conditions under which defendants' bond was given were materially altered and defendants "lost their right of subrogation to plaintiff's right against Davis, to compel him to keep fifty shares as collateral to his mortgage and to pay dues" thereon; that, "Indeed, they lost all rights against Davis on any shares, and had substituted for Davis, Hinchcliffe, for whom they were under no obligation to stand as surety, and against whom it would seem they would have no right even by way of subrogation. The assignment of the shares as collateral and the duty of Davis to pay dues upon them are specifically mentioned in defendants' bond. The payment of dues upon that number of shares, and the earning capacity (by way of interest and otherwise) inherent in stock of that amount, and the substantial paid-in value resulting from its age, were material benefits to both Davis and defendants, his sureties. Both dues and stock earnings or increment tended to substantially reduce defendants' liability, and ultimately, when the stock should be worth $5,000, to extinguish it."

As a matter of fact, under the arrangement made by plaintiff association with Hinchcliffe, no default existed at the time judgment on confession was entered, the

creditor association having undertaken to cure the default without recourse to the surety bond; but the court below, though recognizing this situation, went further and correctly held that there was "such a material alteration of the status of the parties to the defendants' detriment as frees them from liability on the bond."

It is the general rule that, "if a surety has paid a debt, he is entitled to all the securities the creditor had against the principal debtor" (Reimel v. Northwestern Trust Co., 304 Pa. 121, 126-7; see, however, South Phila. State Bank's Insolvency, 295 Pa. 433, for exception), and it is clear that in the present case the sureties were deprived by the agreement between the building association and the mortgagor of the benefit of securities named in their bond. It is an equally well settled rule of law that a surety "is bound only to the extent, and in the manner and under the circumstances pointed out in his obligation; and if the principal parties, without his consent, change the contract in a material part, so as to affect the nature and extent of his responsibility, he is discharged": Yubas v. Makransky, 300 Pa. 507, 512, and authorities there cited.

The judgment of the court below is affirmed.