Zusin to Use *v.* Wharton Business Men's B. & L. Association, Appellant.

Argued September 30, 1932.

Before Trexler, P. J., Keller, Gawthrop, Cunningham, Baldrige, Stadtfeld and Parker, JJ.

*James R. Wilson,* and with him *Philip Richman,* for appellant.

*Samuel E. Kratzok,* for appellee.

Opinion by Keller, J., December 16, 1932:

Defendant appeals from a judgment entered against it for want of a sufficient affidavit of defense, in an action to recover $1,000, which the legal plaintiff had left with defendant as additional security for a loan made by it to one Willis.

The following facts appear from the pleadings: On August 11, 1925, Willis, who was the owner of premises 2500 N. 23d Street, Philadelphia, borrowed from the defendant building and loan association, on his bond and warrant, the sum of $8,000, payable "at any time within one year," and, as security, gave his mortgage for a like amount covering said real estate, and also transferred to the defendant building and loan association, as collateral security, forty shares of its stock, which he took out at the time in a new series, on which he agreed to pay monthly. the sum of forty dollars dues, the maturity value of said shares being $200 each. The bond and mortgage, though made payable "at any time within one year," as is commonly provided in building and loan association mortgages in Philadelphia, (See Kupfert v. Guttenberg Building Assn., 30 Pa. 465, 469), required the borrower to pay interest monthly at the rate of six per cent per annum,

($40 a month), together with all fines imposed by the constitution and by-laws of the association, and a premium of thirty-five cents a share, ($14 a month), likewise payable monthly on the stated meeting nights of the association, and also the sum of forty dollars monthly as dues on the forty shares of stock owned by him. They provided that if at any time default should be made in the payment of said principal money when due, or of said interest, fines, premiums or monthly dues or contribution on said stock, for the space of three months after any payment fell due, or in the maintenance of fire insurance on the building, or the production and delivery of receipts for water rent and taxes as provided in said instruments, etc., then and in such case the whole principal debt, should, at the option of the association, immediately become due and payable, and payment of the same could be enforced and recovered at once. The bond also provided that the association should "have the right at any time, at its option, to appropriate, on account of the debt hereby secured, the withdrawal or cancellation value of the shares of the capital stock of the said association pledged as collateral security for the said debt; but it shall not be obligatory on the part of the association to appropriate the said stock." And the mortgage provided: "And the said mortgagor further agrees that for value received, he hereby assigns, transfers and sets over unto the said Wharton Business Men's Building and Loan Association, the mortgagee herein mentioned, all his rights, title and interest in forty shares of the said association, as collateral security for the payment of the principal mortgage debt or sum of eight thousand dollars secured by bond, warrant of attorney and this mortgage, dated this day, with the right to apply or appropriate at any time the value of said shares toward the payment of said debt, and when so applied or appropriated, to

cancel said shares.'' These last two clauses, it will be noted, are not limited in their application to cases where the borrower is in default, but are general in their terms. They should be construed, if possible, as they are written: Moran v. Bair, 304 Pa. 471, 475, 156 Atl. 81; Randall v. N. J. Mtge. Ins. Co., 306 Pa. 1, 6, 158 Atl. 865.

At the same time that the loan to Willis was made, the legal plaintiff, at the request of the defendant, delivered to it the sum of $1,000, under an oral agreement, as additional security for the loan. There is a conflict here as to the terms of the oral agreement. The plaintiff asserts that the money was to be held by the defendant as security, until the monthly payments made by Willis on account of the dues or contribution on the shares of stock aforesaid amounted to $1,000. The defendant claims, on the other hand, that it was given as additional security for the payment of the loan, without the limitation annexed to it by the plaintiff. See Munn v. McDonald, 10 Watts 270, 273, as to the meaning of ''collateral security.'' This raised an issue of fact which would be for a jury to decide. But the statement of claim filed presented another matter, which it was claimed relieved the plaintiff of the necessity of going to trial. It arose as follows: On April 28, 1928, Willis and his wife conveyed the premises 2500 N. 23d Street to Samuel Davis and Ida Davis, subject to the defendant's mortgage of $8,000. They also assigned to them all their right, title and interest in the forty shares of stock of the defendant association, subject to the previous assignment to the association as security for the payment of Willis' bond. The Davises also gave the defendant association their own bond for $8,000 as collateral security for the payment of the Willis bond and mortgage with like terms and conditions. On November 3, 1930, Mollie Zusin, the legal plaintiff, assigned and

transferred to Samuel Cohen, the use plaintiff, all her right, title and interest in the one thousand dollars deposited by her with the defendant association as aforesaid, subject to the prior rights of the defendant association. On March 13, 1931, the Davises became unable to keep up the payments of $94 a month on account of the dues, interest and premium aforesaid, and in order to prevent a foreclosure resulting from such default, requested the defendant to cancel the forty shares of stock held by defendant as security for the debt and apply the same on account of the bond given by Willis and the collateral bond given by them as aforesaid. The defendant association pursuant to this request and acting under the authority given it in the bond and mortgage as above recited, cancelled said stock and applied the withdrawal or cancellation value, $3,000, on account of said debt. At the same time the Davises paid the association one thousand dollars more, which was likewise applied on the debt, reducing it to $4,000. The Davises then took out twenty shares of stock in a new series of the defendant association which required the monthly payment of $20 dues, $20 interest and $6 premium, or $46 in all, and assigned them to the defendant association as collateral security.

The use plaintiff averred in his statement that by this arrangement the terms of the Willis bond and mortgage were changed to the detriment of the plaintiff, by the substitution of the twenty shares of stock in the new series for the forty shares of stock in the older series, and the corresponding smaller monthly payments on account of dues or contribution to the stock. The defendant, on the other hand, denied that there was any change or alteration in the Willis bond and mortgage, or any substitution of the twenty shares of stock in the new series for the forty shares of stock in the older series, and averred that the forty shares

of stock in the older series were cancelled under and in strict accordance with the terms of the bond and mortgage, and not in contravention of it, and that the legal plaintiff was fully aware at the time she made the deposit of its rights in this behalf; that the twenty shares of stock in the new series was not taken out and assigned to defendant in substitution for the forty shares of stock so lawfully cancelled as aforesaid, but as additional collateral security furnished by the Davises to the defendant on the collateral bond given by them to the defendant as security for the payment of the Willis bond.

The lower court held that the affidavit of defense was insufficient to prevent summary judgment against the defendant.

We think the matter is not sufficiently clear to warrant a summary judgment against the defendant; that the facts should be presented before a jury, and that in the light so obtained the legal principles involved may be better applied. Of course, if the jury should find, in accordance with plaintiff's contention, that the money was deposited as security, to be held until the dues or contributions on the forty shares of stock taken out by Willis and assigned to the association as collateral should amount to $1,000, then judgment should be entered against the defendant for that amount and interest; but if the defendant's contention on that point should prevail, the other questions raised by the pleadings would come up for consideration and decision.

Plaintiff bases his case on the general principle, which is too well settled to require citation of authority for its support, that any material variance or alteration of the terms of a contract between the creditor and principal debtor will discharge the surety to it, unless his consent to such change or alteration is obtained; contending that the facts hereinbefore recited

amount to such a change or alteration in the bond from Willis to the defendant association, and that their effect is to discharge the $1,000 held as security for the bond, thus requiring its re-payment to him. Of course, the case must at present be judged in the light of the averments contained in the affidavit of defense, and wherever they differ from the facts averred in the statement, the former must be accepted as true for present purposes.

Strictly speaking, neither the legal plaintiff nor the use plaintiff is surety on the bond from Willis to the defendant association, which is the debt for which the $1,000 was deposited as security. Neither of them signed the bond or any collateral undertaking agreeing to become responsible for its payment. No personal liability against either of them can be enforced. The thousand dollars deposited with the defendant association may rather be regarded as the surety: Robinson v. Roe, 233 Fed. 936, 940 (C. C. A. 2d Circuit); Hampton v. Congress B. & L. Assn., 300 Pa. 501, 505, 150 Atl. 895. If we adopt the distinction made in Corpus Juris, (50 C. J. 13, 27) between personal suretyship and real suretyship, it would be classed as a "real surety" which is defined to be, "where certain specific property can be taken to enforce payment of another's debt, or the performance of some duty owing by another and the owner of such property, if he would save it, must pay or perform, but he is not personally liable in damages." Certainly the legal plaintiff, or the use plaintiff, on succession to her, would have the right to pay the original debt or obligation to the defendant and require the assignment to her or him respectively, of the securities held by the defendant for its payment.

But such a surety cannot invoke the principle of law relied on where the creditor has done no act not contemplated in the contract or agreement between

him and the principal debtor. If the creditor has taken only such steps as the contract expressly authorized him to take, or as the law annexed to the contract, as part of its terms, then the surety cannot be heard to complain, for the deposit was made subject to the right of the creditor to take those very steps, without releasing or affecting the surety.

The law relating to loans by building and loan associations to their shareholders on bond secured by mortgage, on the building and loan plan, is fairly well established; and when the deposit of $1,000 was made as security for such a loan, the ordinary legal rights of the parties must be held to have been in contemplation at the time the additional security was furnished. One of these is that upon default by the borrower the association can foreclose the mortgage and/or apply the value of the borrower's stock to the debt: Bartram B. & L. Assn. v. Nolen, 300 Pa. 417, 150 Atl. 628. In addition to this, the bond and mortgage specifically gave the right to the association to apply the value of the shares toward the payment of the debt, and, when so applied or appropriated to cancel the shares. This, as, before pointed out, was not limited in the bond and mortgage to cases where there was a default, and hence must have contemplated its exercise where, without any present default the association was requested to do so by the holder of the shares. And this is but in conformity with another well settled legal right on the part of the borrower, when the association is solvent, to apply his payments on account of stock to the loan, where it is sufficient to pay the loan, or the remaining security is satisfactory to the lender: Spring Garden Assn. v. Tradesmen's Loan Assn., 46 Pa. 493; Hamilton Trust Co. v. Hopkins, 244 Pa. 1, 90 Atl. 541; Consolidated B. & L. Assn. v. Shipley, 95 Pa. Superior Ct. 232, and cases cited on page 237.

It is unquestioned that had the Davises defaulted

in any of the respects specified in the bond and mortgage, the association could have appropriated the withdrawal value of the forty shares of stock to the debt, without affecting the deposit of $1,000 as surety; and might have foreclosed the mortgage or not, as it saw fit, without effect on the deposit, and without notice to, or the consent of, the plaintiffs or either of them. What the law gave them as a right in case of default, the contract, as contained in the bond and mortgage, specifically authorized, without default, when the owner of the shares, finding himself unable to continue the monthly payments, requested the association so to appropriate their withdrawal value to the debt. Had the money so appropriated to the debt been diverted to some other loan or for some different purpose, or been paid to the borrower, the plaintiff would have cause for complaint, but he has no ground to object when nothing was done except what was expressly authorized in the bond and mortgage. The situation is not changed by the fact that the Davises paid an additional $1,000 on the debt, thus reducing it to $4,000, or that as additional collateral security for the debt so reduced and their collateral agreement to pay it, they took out and assigned to the association, twenty shares of stock in a new series, provided, as averred in the affidavit of defense, these new shares were not taken in *substitution* of the forty shares of the older series, but only by way of additional collateral security; for in such case the original bond would not be cancelled or altered, and the deposit given for its security would not be affected; whereas if there had been a substitution of the new shares for the older series, as averred in the plaintiff's statement, the obligation of the original bond would have been affected, and the case would come within the decision in Double Dollar B. & L. Assn. v. Kushin, 306 Pa. 121, 159 Atl. 39, and the deposit surety would be released. In that

case the defendant's bond was given as collateral on the express condition that he would save the building and loan association harmless from all loss until such time as the borrower should have by payments of dues on fifty shares of stock or by payments on account of the principal of said mortgage loan of $10,000, reduced the net amount of the indebtedness to said association to the sum of $5,000. The contract between Kushin and the association was contained in the collateral bond, and in that alone, and it was held that a voluntary substitution of thirty shares for the fifty shares referred to in the bond released the surety.

It must be borne in mind that the Davises were not the original debtors, for whose debt the legal plaintiff deposited the $1,000 as security. Their bond given to the defendant association as collateral security for the debt represented by Willis' bond was not in substitution for that bond but additional to it, and the defendant association could dispose of it or obtain additional security by way of new shares without affecting or jeopardizing its rights in relation to the $1,000 deposit. This is settled by the decision of the Supreme Court in Hampton v. Congress B. & L. Assn., supra. There Hampton assigned $4,000 of paid up stock in the Congress Building & Loan Association as additional collateral security for a bond and mortgage given the association by Rothwell. Rothwell conveyed the mortgaged premises to Shelbourne Realty Co. under and subject to the mortgage. The Shelbourne Realty Co. gave the association its separate and additional bond to secure the mortgage loan. On default the mortgaged premises were sold at foreclosure sale for less than the debt. The building association sold Hampton's full paid stock, and applied the proceeds to the deficit and released the Shelbourne Realty Company's bond; and it was held that it could lawfully do so; that holding various collateral securities it could exercise its right

to indemnify itself from either or both; could relinquish part or all held by it without the consent of the other creditors of the debtor, (p. 505). So in this case, so long as the defendant association did not release or alter the original bond and mortgage, or substitute new shares of stock for those originally provided for in the bond, it could avail itself of all the remedies given it by the bond and mortgage without affecting the other collateral held by it. It could avail itself of its right to cancel the shares assigned to it as security and apply the funds received from the withdrawal or cancellation value to the payment of the debt, without losing any of its rights as respects the other collateral security held by it. Accepting the facts averred in the affidavit of defense as true, that is all the defendant did, and it gave the legal plaintiff or her assignee no right to demand back from defendant the $1,000 deposited with it as security.

The first assignment of error is sustained. The judgment is reversed with a procedendo.