## Jacob Sall Building & Loan Association *v.* Heller, Appellant.

238

Argued January 4, 1934. Before FRAZER, C. J., KEP-HART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Lester Lichtenstein,* for appellant.—It was the association's duty at the time it cancelled the 60 shares of stock in the 32d series to notify the surety and advise him of its action, to give him the opportunity of protecting his rights in the matter at that time: Double Dollar B. & L. Assn. v. Kushin, 306 Pa. 121; Zusin v. B. & L. Assn., 107 Pa. Superior Ct. 181.

Where the meaning of a written agreement is involved in doubt, that construction must be adopted which is favorable to the party who did not draw it: Alcorn Combustion Co. v. Kellogg Co., 311 Pa. 270.

In construing a contract, the language should be interpreted so that the agreement as a whole may be carried into effect: McMillen v. Titus, 222 Pa. 500.

The new agreement was a substantial and material variance from the terms of the original contract and relieved the defendant from further liability: Warner v. Bergdoll, 253 Pa. 164; Henderson v. Ardery, 36 Pa. 449; Bensinger v. Wren, 100 Pa. 500; Nesbit v. Turner, 155 Pa. 429; Robbins v. Robinson, 176 Pa. 341.

*Harry M. Miller,* for appellee.—The building association had the right to appropriate the stock, collaterally assigned for the mortgage debt, where the mortgagor was in default, without requiring the consent of the appellant: Selikowitz v. B. & L. Assn., 103 Pa. Superior Ct. 453; Consolidated B. & L. Assn. v. Shipley, 95 Pa. Superior Ct. 232; Bartram B. & L. Assn. v. Nolen, 300 Pa. 417; Spring Garden Assn. v. Loan Assn., 46 Pa. 493; Hamilton Trust Co. v. Hoslins, 244 Pa. 1.

The cancellation of the original shares was in strict accordance with the terms of the mortgage bond and not in contravention of it: Zusin v. B. & L. Assn., 107 Pa. Superior Ct. 181.

A surety in a building contract will not be discharged because of changes made in the contract between the owner and the contractor, where the contract expressly provides that changes may be made: Blauvelt v. Kemon, 196 Pa. 128; Com. B. & L. Assn. v. Steele, 23 Pa. Superior Ct. 19; Koch v. Moyer & Burkhart, 103 Pa. Superior Ct. 270; Young v. Bonding Co., 228 Pa. 373; Zusin v. B. & L. Assn., 107 Pa. Superior Ct. 181.

Misapplication, if any, of paid-in value of pledged stock discharged surety only pro tanto if prejudicial: Robbins v. Robinson, 176 Pa. 341; Com. v. Miller, 8 S. & R. 452; Ramsey v. Bank, 2 P. & W. 203; Neff's App., 9 W. & S. 36; Park Bank v. Kleman, 278 Pa. 165.

OPINION BY MR. JUSTICE SCHAFFER, March 19, 1934:

The court below entered judgment against defendant on a bond which he had given to plaintiff building and loan association. Defendant appealed, contending that

plaintiff had materially changed the terms of the contract with the third party for whom he had become surety, and that the effect of this was to discharge him from liability.

Samuel A. Savitz gave to the plaintiff association a second mortgage for $12,000 on a property he owned. The mortgage and accompanying bond required him to carry sixty shares of stock in the thirty-second series of the association. The bond and mortgage provided also that the shares of stock subscribed for by the mortgagor should be assigned to the association as collateral security for the indebtedness, and contained this further agreement: "And it is hereby agreed that the obligee shall have the right at any time, at its option, to appropriate, on account of the debt hereby secured, the withdrawal or cancellation value of the shares of the capital stock of the said association pledged as collateral security for the said debt, but it shall not be obligatory on the part of said obligee to appropriate the said stock." There was also a clause in which the mortgagor appointed the secretary of the association his attorney to transfer to the association the shares of stock.

We agree with the court below that much of the difficulty encountered in the disposition of this case arises out of the confusing phraseology of the bond signed by appellant but prepared by the solicitor for the building and loan association. That bond was in the penal sum of $4000 conditioned for the payment of $2,000 "together with all costs, hereinafter mentioned charges, expenses and attorney's fees." It recited that Savitz had obtained "an advance" of $12,000 from the association "upon 60 shares of the stock of the said association, *in the 32d series*," and had given "as further security a bond and mortgage secured upon premises [described], which bond and mortgage provides, inter alia, that the said obligor and mortgagor will pay......each and every month to the said obligee the sum of sixty ($60) dollars as and for a contribution upon said shares of

stock," and pay interest, premiums, fines, taxes, etc. It set forth that Savitz as a condition precedent to obtaining the advance of $12,000 had agreed to procure and deliver the bond in question in the penal sum of $4,000.

Next follows the condition of the bond which is "that if the above obligor will well and truly, faithfully and promptly pay the said contributions to the extent of two thousand ($2,000) dollars, upon the said stock as aforesaid, and the interest upon the said principal sum, and the premiums as aforesaid, when and as the same are payable, under the terms and provisions of the said bond and mortgage hereinbefore referred to, and will also pay all fines which may be imposed for the nonpayment of the said contributions......, and the taxes which may be assessed against the said premises......and shall at all times keep the building mentioned in said mortgage insured against loss or damage by fire......and in default thereof the said obligee is hereby authorized to advance for the above obligor such sums as may be necessary to pay for taxes, interest, or prior encumbrances, water rent, ground rent, fire insurance premiums, etc., and charge the amount thereof against the above obligor, all of which the said obligor hereby agrees to repay, in addition to the principal sum of this bond, and the said obligor will well and truly perform the aforesaid and all other covenants and stipulations in the said bond and mortgage contained for and during the full period and term of five years, or until such times as the said mortgage shall be fully paid or contributions amounting to the sum of two thousand dollars shall have been made on account of the said shares of stock, then this obligation to be void; otherwise to be and remain in full force and virtue."

The ambiguity arising out of the careless use of the word "obligor" in view of the prior reference to both Savitz and Heller as such is apparent. At some parts the language would indicate rather clearly that appellant was referred to, while in other parts it seems to

point to Savitz, as otherwise it would apparently impose upon Heller the obligation to do precisely the same things as Savitz was obliged to do under his bond and mortgage and irrespective of their performance by Savitz. If in view of the language used there is any doubt as to the obligations assumed by appellant, such doubts should, under well settled principles, be resolved against the appellee. We think, however, this is not the turning point of the case.

Savitz defaulted in the payments required by his bond and mortgage, whereupon the association, at the request of Savitz but without the knowledge or consent of appellant, cancelled the 60 shares of its stock in the 32d series and applied part of the cancellation value of $1,380 towards Savitz's arrearages for dues, interest, premiums, fines and taxes, and used the remaining $314.13 on account of payments on 60 new shares of stock in the then current 36th series, which Savitz thereupon assigned to the association in substitution for the shares in the earier series.

Appellant's contention, upon which he seeks to avoid liability under the bond, has its foundation in the well established principle that a surety has the right to stand upon the very terms of his obligation and is bound no further, and that any material alteration of a contract by the principal parties without the surety's assent is fatal to its validity as against the surety: Bensinger v. Wren, 100 Pa. 500; Nesbit v. Turner, 155 Pa. 429; Robbins v. Robinson, 176 Pa. 341; American Telegraph Co. v. Lennig, 139 Pa. 594; Bessemer Coke Co. v. Gleason, 223 Pa. 84; Schroyer v. Thompson, 262 Pa. 282.

Appellee, in opposition, relies upon the equally well established rule that any arrangement or agreement authorized or contemplated by the principal contract cannot constitute a variation thereof relieving the surety. Having stated this proposition, appellee points to the clause contained in the bond and mortgage providing that the association might "at any time, at its option,

......appropriate, on account of the debt hereby secured, the withdrawal or cancellation value of the shares of the capital stock of the said association pledged as collateral security for the said debt."

We cannot agree with appellee that the provision in the bond and mortgage gave it the right, from the standpoint of the appellant and his liability under his bond, to cancel Savitz's 60 shares in the 32d series and set up 60 new shares in a later series. One familiar with the method of operation of building and loan associations knows that it is one thing to give the association the right "to appropriate" the withdrawal or cancellation value of shares on account of an indebtedness, and quite another to give it the right to cancel shares in one series and set up a like number of shares in another series. It is our opinion that this was such a change in the contract between Savitz and the association as to entitle appellant to notice thereof and to require his assent, if his obligation was to continue.

The situation in Double Dollar B. & L. Assn. v. Kushin, 306 Pa. 121, is not entirely analogous but discussion of it is not inappropriate. There judgment upon confession was entered on defendants' bond given as surety for the payment of a loan made by the plaintiff building and loan association. The loan of $10,000 was secured by a second mortgage and by 50 shares of building association stock in the 14th series. The defendants gave their bond as surety for $5,000 conditioned upon their saving the association harmless by reason of the failure of the debtor to pay dues, interest, taxes, etc., until such time as he should have reduced the net amount of the indebtedness to the sum of $5,000. Subsequently, upon default by the debtor, the association agreed to cancel the shares in the 14th series, to apply the withdrawal value to the reduction of the loan and the payment of arrearages, and to accept 30 shares in its 40th series as collateral for the balance due. This was done without notice to or consent of the defendants. It was

held that they were discharged of liability under their bond. We quoted from the opinion of the lower court, as follows: "The payment of dues upon that number of shares, and the earning capacity (by way of interest and otherwise) inherent in stock of that amount, and the substantial paid-in value resulting from its age, were material benefits to both Davis and defendants, his sureties."

In Zusin v. Wharton Business Men's B. & L. Assn., 107 Pa. Superior Ct. 181, the plaintiff deposited with the defendant association $1,000 in cash as collateral security for the payment of a certain obligation of a mortgagor who borrowed from the association on his bond and mortgage. The case came to the Superior Court merely on the pleadings and for that reason the facts are not as clearly established as might be desired. The plaintiff, in suing to recover his thousand dollars, averred in his statement of claim that the debtor defaulted, whereupon the association cancelled the stock held by it as security and applied the withdrawal or cancellation value on account of the indebtedness, at the same time taking out a smaller number of shares in a new series, all without notice to plaintiff. The defendant in its affidavit of defense denied many of the averments of the statement of claim. In the course of his opinion Judge KELLER, speaking for the Superior Court, said: "......if there had been a substitution of the new shares for the older series, as averred in the plaintiff's statement, the obligation of the original bond would have been affected, and the case would come within the decision in Double Dollar B. & L. Assn. v. Kushin, 306 Pa. 121, 151 Atl. 39, and the deposit surety would be released." While it was held in that case that the association had the right to cancel the shares, this was clearly so by reason of an express provision of the mortgage, such as we do not have here.

Upon the original default of Savitz there is no question that the condition of appellant's bond was broken and he became liable to the association under the terms

of his obligation. Appellee, instead of standing on its rights against the plaintiff, proceeded to cure the defaults, which it had the right to do, and then cancelled Savitz's shares in the 32d series and agreed that thereafter he should pay monthly amounts upon shares in a different series. Appellant's bond was conditioned upon payments being made upon stock in the 32d series. This was rendered impossible by the action of the association. Each series of shares in a building and loan association stands upon its separate footing and in view of the specific mention made in all of the papers, including appellant's bond, of shares in the 32d series, the association should before voluntarily agreeing to a closing out of those shares and the substitution therefor of new shares, have consulted and obtained the assent of appellant. Not having done so, it cannot now look to his bond.

Appellee argues that it should not be penalized for doing what was helpful to the situation at the time. It is likely that appellant, if confronted with the situation existing upon the default, would have recognized the force of this and would have agreed to the change in the hope that Savitz would work out of his difficulties. In agreeing, however, in effect, to relieve Savitz of his obligation to make payments upon shares in the 32d series and to accept in lieu thereof monthly payments upon different stock, the association departed from the original contract with the result that appellant, as surety, was discharged.

The judgment is reversed and is here entered for defendant.