## Alexander's Estate

18

20

22

*Yale L. Schekter, Newbourg & Grubb,* and *Wintersteen, McCoy & Wintersteen,* for exceptants.

*Rambo, Rambo & Mair,* contra.

*Boyd Lee Spahr,* for Land Title Bank & Trust Co.

LADNER, J., November 26, 1937.—In view of the importance of the question involved in this case and in several other audits pending for adjudication, leave was

granted to counsel other than those of record to be heard and to file briefs as amici curiae. We have been furnished with excellent briefs and have had the advantage of able arguments.

Two sets of exceptions to the adjudication of the auditing judge are before us for disposition. The first set was filed by the Girard Trust Company as trustee for sundry trusts, a claimant; and the other set (comprising exceptions which are identical) by Lenora Koecker, a creditor, First Trust Company of Philadelphia, substituted trustee for Benny Quellwasser, a creditor, and Mazie R. Alexander, Louis Alexander and Land Title Bank & Trust Company (successor to the West End Trust Company), executors, as also trustees, of the will of Benjamin Alexander, deceased. These sets of exceptions will be considered separately.

### Exceptions of Girard Trust Company, Trustee

The exceptions of Girard Trust Company, trustee, all relate to the claim made by it on a "collateral" bond given by the decedent in connection with a mortgage and its accompanying bond for $105,000, reduced by payment on account to $100,000. The mortgage and bond was executed by Alfred J. Caldwell. The mortgaged premises, 1311-13 Arch Street, Philadelphia, were foreclosed in the lifetime of the decedent and bid in by the claimant for the sum of $50. The claim made at the audit was for $99,950, being a balance arrived at by crediting the mortgage debt with $50, the price bid at the sheriff sale. The mortgaged premises are still owned by the claimant and it is admitted are worth more than the amount of the claim. Other facts appear fully in the adjudication and need not be repeated.

The five exceptions filed by the trust company raise but a single question, namely, whether the auditing judge erred in rejecting the claim. The auditing judge ruled that in view of the insolvency of the estate, the so-called "bankruptcy" rule as announced by Mr. Justice Linn in

the recent case of United Security Trust Company Case, 321 Pa. 276, applies. That is to say, that the claim was provable only to the extent that a deficiency remained after deducting from the amount of the mortgage the fair value of the property acquired by the mortgagee at foreclosure sale. The auditing judge in a careful adjudication reviewed the rule laid down in that case in the light of its explanation by Mr. Justice Stern in Beaver County B. & L. Assn. v. Winowich et ux., 323 Pa. 483 (see note page 490). As we thoroughly approve not only of the auditing judge's ruling but the reasoning by which he supports the same, we do not feel called upon to repeat what he has so well said in his adjudication. In this opinion, therefore, we will confine ourselves solely to a consideration of the three points vigorously pressed upon us by the learned counsel who presented the claimant's viewpoint.

First, we are urged to sustain the exceptions because the auditing judge made no specific finding that the estate before him for distribution was actually insolvent. Of course, if the estate were solvent, the rule of the United Security Trust Company case cannot be applied. But though the auditing judge made no specific finding of insolvency, yet it plainly appears from the whole record that insolvency was not only assumed but conceded by all counsel to be the fact. We have, moreover, made a careful computation of the claims admitted and allowed by the auditing judge and find they total $160,000.30, to which must be added claims postponed of $19,551.16, making a total of provable claims, $179,489.46. The itemized computation of these claims which we have made from the record is filed with and now made a part thereof. As against this total of claims admitted, allowed and pending, excluding that of the claimant (which would bring the total well over $279,000), the accountants have assets in their hands in the amount of only $152,509.84. We therefore find without hesitation that the estate is in

fact insolvent and that the auditing judge was correct in so treating it.

Second, it was next urged upon us that by a long line of Federal decisions the bankruptcy rule as evolved from the Federal Bankruptcy Law has been held to apply only to those cases in which the claimant has in his hands at the time of the bankruptcy unliquidated collateral belonging to the bankrupt. We need not dispute this interpretation by the Federal courts, based as it is upon the express language of the Federal act, for the rule we are considering is not the rule founded on the Federal act but a rule founded upon our own State insolvency act. There is nothing we can add with profit to the discussion of the auditing judge of this subject, and we fully agree with him that the learned justice who wrote the opinion for our Supreme Court in referring to the rule as the "bankruptcy" rule was but using a familiar, short, and convenient name without intending to give it the technical interpretation of the Federal courts. We therefore find no error in the auditing judge refusing to follow the Federal decisions cited.

Third, the learned counsel at the argument and in the briefs pressed upon us most earnestly the point that even if the Federal interpretation of the bankruptcy rule is not binding upon us, nevertheless the auditing judge erred in applying the United Security Trust Company rule to a case where the mortgage holder had foreclosed and acquired title to the mortgaged property in the decedent's lifetime. In other words, the argument is made that the rule does not apply where a mortgagee had converted the mortgage collateral by sheriff sale into real estate even though the title of that real estate is still held by the mortgagee. In support of this argument there is urged upon us the line of cases, the most recent of which is White's Estate, 322 Pa. 85, which holds that the price bid at the sheriff sale is conclusive upon the *parties* as to the value of the mortgaged premises and that: "After foreclosure the *debtor* has no right to a reconveyance of the property,

even though he pays the balance (or deficiency) of the debt remaining." (Italics ours.)

This extreme rule which enables a mortgage creditor to acquire the mortgaged premises for nominal bid because of lack of competitive bidding, and yet demand of the mortgagor the full amount of his mortgage debt, is so shocking to the sense of justice that this court would not willingly want to extend it beyond the letter of the controlling decisions. To our minds the rule must be strictly confined to cases arising between the parties to the mortgage and bond contract. In taking this position we feel we are but following the attitude of our Supreme Court, which has frequently deplored what may .be termed an unconscionable rule. See Lomison v. Faust, 145 Pa. 8, especially that portion of the Supreme Court's opinion which appears at the bottom of page 12 and top of page 13. See also White's Estate, supra, where the learned justice who wrote the opinion, at page 90, terms the condition resulting from its application as a "harsh" situation and refers to the fact that the legislature has sought to correct it. In Beaver County B. & L. Assn. v. Winowich et ux., supra, the learned justice who wrote the majority opinion took occasion to warn the profession in his footnote to page 490 that the conclusiveness of the sheriff sale price rule was not necessarily applicable as between the mortgagee and other creditors of the mortgagor or as between the mortgagee and third persons generally.[1] In the same case our learned chief justice took pains, in his concurring opinion, to point out how even as between the parties themselves relief might be obtained where there was no competitive bidding or a grossly inadequate price bid. His suggestion that the mortgagor might, by

---

[1] Since this opinion was filed, our attention has been called to the case of Strauss v. Strauss & Company, Inc., Supreme Court (West. Dist.), 328 Pa. 72, handed down November 12, 1937, in which Mr. Justice Stern repeated this principle in the body of the opinion and said in substance that the rule of the United Security Company case applied even though the mortgage had been foreclosed before the audit of the receiver's account.

28

timely objections to the sale, have it set aside on the theory that gross inadequacy of price is tantamount to a legal fraud was approved by one of the most recent cases on the subject: Hettler et al. v. Shephard, 326 Pa. 165.

It seems clear to us, therefore, that whatever may be said in favor of enforcing the "conclusiveness of a sheriff sale price" rule because of necessity of protecting the obligation of contract, no such necessity compels the adherence thereto as against creditors of an insolvent mortgagor. As against them the contract protects the mortgagee only to the extent of receiving what he is fairly entitled to, and no more. The law should protect him to the extent that he does equity but should not permit the use of a preferred position to perpetrate injustice or inequity upon others. The public policy as reflected in our insolvency and bankruptcy laws prevents such a result. It is a sound public policy which requires equality of distribution among creditors and such equality is not attained if a mortgagee is permitted to take over the mortgaged premises and yet claim a dividend upon the full amount of his mortgage debt.

After all, within the limits of our jurisdiction, we apply the rules and principles of equity: Douglas' Estate, 303 Pa. 227. We administer justice under equitable forms. Equity has a method of looking through the shadow to the substance and dealing with the realities of a situation: Love, Receiver, v. Clayton et al., 287 Pa. 205, 213. What then are the realities of the situation? Reason or argue as we may, we cannot shut our eyes to the fact that here is a mortgage creditor who has chosen to bid in the mortgaged property for a nominal sum at a time when the depression and the ensuing panic had so destroyed the real estate market that there were no bidders at sheriff sales. The claimant frankly admits the property acquired is worth far more than the amount of the mortgage debt. Between the debtor and the creditor, the debtor may be estopped from contesting the value of the property as fixed by the sheriff sale, but as between creditors and the mort-

gagee, the actual fair market value of the property still held must be credited against the debt. If this be done, then the mortgage debt *so far as concerns other creditors* is paid in full. The auditing judge ruled it was and his conclusion in this regard is supported by Bugh's Estate, 95 Pa. Superior Ct. 29, affirming this court, and Weightman v. Union Trust Co., 208 Pa. 449, both cited by Mr. Justice Stern in the footnote to page 490, in Beaver County B. & L. Assn. v. Winowich et ux., supra.

We are urged, however, to limit the rule of the United Security case to those cases where the mortgage collateral remains unconverted at the time of the death; and this because, by the sheriff sale, the mortgagee has acquired the new status of owner; that as such, the mortgagee's title is free and clear of the equity of redemption, and he cannot thereafter be made to account for the value of the property so acquired. True the settled law is that his title is so indefeasible that he could not be compelled to account for the value thereof to the mortgagor: White's Estate, supra; but so far as the creditors are concerned the collateral has only changed its form. If the mortgage creditor wishes to, he can still surrender it in its changed form and prove his claim for the full amount. (See section 28 of the Insolvency Act of 1901, supra, quoted in the footnote on page 282 of the United Security Trust Company Case, supra.) Or, if he wishes to, he can retain it and prove the deficiency between the fair market value of his collateral in its changed form, and the amount of his judgment. Or if he has resold it (as in Bugh's Estate, supra) he can prove his claim to the amount of the difference between the price for which he resold the property and the judgment. Under all such circumstances he is getting what is fairly due him. As against creditors of the insolvent debtor, he is entitled to no more.

If we limit the just rule of the United Security Trust Company case by upholding the distinction contended for, we would in effect be penalizing a considerate mortgage creditor who displays forbearance to his unfortunate

debtor in time of stress, and be putting a premium on harsh, inconsiderate treatment of a debtor by a creditor who deserves no advantage. The inevitable result would be that mortgage creditors inclined to be lenient would feel impelled to foreclose immediately upon default in order to escape such disadvantage. The consequent destruction of real estate values, and adverse effect upon the public in general, needs no comment.

Moreover, the principle that the mortgaged premises purchased by the mortgagee at a foreclosure sale may be regarded only as a change in the form of the collateral as to third parties has been recognized in decisions by our Supreme Court. Thus in Gordon, etc., v. Mohawk Bond & Mortgage Co., 317 Pa. 257, Mr. Justice Schaffer, in a clear and convincing opinion, held in a case arising between the pledgee and the pledgor of certain mortgages, that by foreclosing the mortgages and bidding in the mortgaged properties the pledgee has committed no conversion, for the collateral was not really parted with, its form being merely changed; so, too, in Weightman v. Union Trust Co., supra, in a suit on a surety bond given to secure a mortgage, the court refused to allow the mortgagee to base his claim for loss against the surety on the nominal price bid by him at the foreclosure sale. In the decision last cited, we have a case where, notwithstanding a sheriff sale in proceedings begun thereafter, the mortgagee was held accountable for the fair value of the property so purchased. See also Beaver Trust Co. v. Morgan et al., 259 Pa. 567.

After the argument we were furnished with a copy of a recent decision by the Court of Common Pleas No. 3 of this county in the Matter of Luther Harr, Secretary of Banking, as Receiver of the Providence Building and Loan Association (C. P. No. 3, June Term, 1935, No. 3158), in which that court declined to apply the United Security Trust Company rule to a case where a mortgagee had foreclosed against the property of the build-

ing and loan association before the Secretary of Banking took possession. It is not clear from the opinion that the building association whose assets were before the court for distribution was insolvent in the real sense of that word. The law permits the Secretary of Banking to take possession of a building association as receiver where its assets are insufficient to pay the shareholders in full, even though there is ample to pay all creditors in full. If in that case there was no real insolvency in the sense of insufficient assets to pay off creditors, the United Security Trust Company rule might not apply, and under such circumstances the decision cited to us might be correct, though no precedent here.

But assuming that the building association in that case was actually insolvent in the real sense of the term, even then, with all due respect to the court rendering the decision, we would still feel unable to accept it as a precedent. This because the opinion shows its basis to be that the Secretary of Banking is limited to whatever rights the association itself might have had as of the date he took possession, and that the secretary had acquired no new right to reduce the claim of the mortgagee by the fair value of the property. We think in so ruling the learned judge who wrote the opinion overlooked, or his attention was not called to, the applicable provision of the Department of Banking Code of May 15, 1933, P. L. 565, regulating receivers of institutions subject to the control of the Banking Department, particularly the last paragraph of section 701 which provides:

"The secretary shall be the representative of the creditors of the institution and shall be entitled, as such, to have vacated and set aside, for the benefit of the creditors, any judgment, execution, attachment, sequestration, payment, pledge, assignment, transfer, conveyance, or encumbrance, which could have been avoided by any of the creditors, *or by which one creditor is given an unlawful preference over another.*" (Italics ours.)

This section was a reënactment of section 29 of The Banking Act of June 15, 1923, P. L. 809, which in turn was copied verbatim from section 39 of the Banking Department Act of May 21, 1919, P. L. 209, as drafted by the Commission to Codify and Revise the Banking Law. See Report of Commissioners to the Legislature, dated February 21, 1919, in which the annotation to this section discloses that it was taken from section 17 of the Insolvency Act of 1901, supra, which the commissioners explained they followed for the sake of uniformity.

The rights of the Secretary of Banking as receiver are not merely those of an assignee, nor are they limited by the rights of the insolvent institution. His rights rise much higher: he is the representative of all of the creditors and can assert and fully protect their rights. Because of this, we cannot follow the opinion.

For these reasons, therefore, we hold that the auditing judge was correct in disallowing the exceptant's claim and dismiss the exceptions to his ruling.

*Exceptions of Lenora L. Koecker, a Creditor, First Trust Company of Philadelphia, Substituted Trustee for Benny Quellwasser, a Creditor, and Mazie R. Alexander, Louis Alexander and Land Title Bank & Trust Company (Successor to the West End Trust Company), Executors, as also Trustees, of the Will of Benjamin Alexander, Deceased.*

These exceptions to the adjudication of the learned auditing judge are in the nature of an anchor to windward, and seek to protect the exceptants in their rights to review what they allege to be an error of the auditing judge which might have been important had the auditing judge decided in favor of the Girard Trust Company's claim. The error alleged is that the learned auditing judge should not have construed the bond of the decedent as an original undertaking but in the nature of a suretyship. It is not clear that calling this bond an original undertaking makes it any the less a suretyship in na-

ture, nor do we understand that the auditing judge so ruled. It may be, aside from any other question in this case, that if the Girard Trust Company, as mortgagee, had granted an extension of the mortgage to the mortgagor, without knowledge or consent of the decedent surety, his obligation might be treated as discharged: Double Dollar B. & L. Assn. v. Kushin et al., 306 Pa. 121; Davis et ux. v. Mortgage B. & L. Assn., 116 Pa. Superior Ct. 345 (allocator by Supreme Court refused). However, in the view that we have taken of the primary question involved in this case, it is not necessary to pass upon those exceptions and they are accordingly dismissed pro forma.

All exceptions are dismissed and the adjudication is confirmed absolutely.