## Land Title Bank and Trust Company *v.* Freas, Admrx., Appellant.

Argued December 8, 1938. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Edwin W. Semans,* of *Highley & Semans,* for appellant.

*Knox Henderson,* with him *Robt. von Moschzisker,* and *Ballard, Spahr, Andrews & Ingersoll,* for appellee.

OPINION BY MR. JUSTICE MAXEY, March 22, 1939:

After a default occurred in the payment of the principal, interest and taxes due under a mortgage debt, a mortgagee agreed in writing to accept the payment of interest "past and future" at the rate of 4.8% instead of at the previously stipulated rate of 6%. Interest on the mortgage which became due *after* the execution of the agreement was paid at the rate of 4.8%. This state of facts gives rise to the question: Did such action by the mortgagee release a gratuitous surety who has given a collateral bond for the payment of a portion of the mortgage debt?

The matter came before the court below on plaintiff's rule for judgment for want of a sufficient affidavit of defense. Judgment was entered for the plaintiff for the amount claimed, to wit, $3,500 with interest. Defendant filed a rule to show cause why the judgment entered should not be opened and defendant let into a further defense. The court below made the following order: "Defendant's rule to open judgment is discharged and the judgment heretofore entered in favor of the plaintiff

and against the defendant, on plaintiff's rule for judgment for want of sufficient affidavit of defense and new matter, is confirmed." Thereupon two appeals were taken, one from the entry of judgment for the plaintiff and the other from the order discharging the rule to open judgment.

In its opinion the court below, after reciting at length the facts giving rise to the litigation, based its decision on this ground: That the purported agreement to accept a reduced rate of interest "was not an enforceable agreement because the essential element of consideration was lacking." The court said: "The question as to whether under all circumstances the affixing of a corporate seal [which was done here] to an instrument imports consideration, is immaterial to the determination of this case. . . . It does not follow that a writing so sealed constitutes a contract. . . . While the instrument [in question] is called an 'agreement,' it is not a contract in the legal sense . . . the plaintiff agrees to nothing in a contractual sense . . . it could at any time under the terms of the so-called 'agreement' demand the full rate of interest, i. e., 6%, named in the mortgage, and in the event of the mortgagor declining to pay the interest at that rate plaintiff could immediately and without further action foreclose the mortgage or sue out the bond. . . . The so-called agreement is at most an expression on the part of the plaintiff of its willingness to assist the mortgagor . . . [in] avoiding an immediate foreclosure of the mortgage. . . . There is nothing unusual in a mortgagee, in times of stress, accepting, without prejudice, interest at a rate lower than that called for in the mortgage." The court then said: "It is well settled in this State that mere forbearance on the part of a creditor or delay in enforcing his rights do not release a surety" (citing *Plummer v. Wilson*, 322 Pa. 118, 185 A. 311, and other cases).

We cannot agree that the agreement referred to is not a contract. This Court has held that a seal on a written

instrument imports consideration and precludes the defense of want of consideration: *Killeen's Est.*, 310 Pa. 182, 165 A. 34. In *U. S., to use, v. Trust Co.*, 213 Pa. 411, 62 A. 1062, we held that a bond signed in the name of a corporation by the vice-president, with the corporate seal affixed, attested by the secretary, is a sealed instrument. In *United States, etc., Co. v. Riefler*, 239 U. S. 17, the United States Supreme Court, in an opinion by Justice HOLMES, spoke of a bond "carrying as a specialty does, its complete obligation with the paper." Williston on Contracts, Revised Ed., Vol. 1, sec. 205, says: "The obligation of the maker of a sealed instrument under the common law depends wholly on certain forms being observed. If the forms are observed the obligation is binding. The instrument is not evidence of an obligation, it is the obligation itself." See *Hartford-Ætna Nat. Bank v. Anderson*, 92 Conn. 643, 103 A. 845. In the instant case not only were the corporate seals of the respective parties used but the instrument contained a recital as to "their respective corporate seals" being "affixed thereto." As to the effect of this, see Williston on Contracts, sec. 271-A, and *Brooklyn Public Library v. City of N. Y.*, 222 App. Div. 422, 226 N. Y. S. 491. A corporation may always so contract under its corporate seal as to make the instrument a specialty: *Grand Lodge K. of P. v. State Bank*, 79 Fla. 471, 84 So. 528; *Com. v. Smith*, 10 Allen (Mass.) 448, 455, 87 Am. Dec. 672.

The court below adjudged its ruling that the "so-called agreement" reducing the interest rate was "not a contract" as "disposing of the principal contention made by defendant" and declared it was "unnecessary to consider at length the further position of the plaintiff that the change, even if viewed as made under a binding contract, was in all events beneficial to the surety and should, therefore, not release him. There are divergent rulings on this point."

The "point" referred to is one which it is not necessary for us to decide in this case, for the surety's liability

here *became fixed* before any change was made in the contract. A surety is not relieved from liability for those debts of his principal which had matured before any change was made in the contract. A liability having been incurred under a contract, a subsequent modification of that contract which does not relate to the accrued liability, has no effect upon the latter. In *Magazine Digest Pub. Co. v. Shade,* 330 Pa. 487, we held that defendants were not relieved from liability for the principal's debts which accrued while the original contract remained in force. The subsequent variation of that contract had no effect upon the liability that had already become fixed. In the instant case, the agreement to accept interest at the reduced rate of 4.8% was made after default had occurred in the payment of the principal and after suit for collection of the amount due was instituted. This modification of the interest rate clearly did not extinguish the surety's then existing obligation. A creditor may waive the further collection of any interest without disturbing the status of his already matured claim against the surety for the payment of the principal, so long as he preserves for the surety's benefit his claim against the debtor for the entire principal sum. Here the appellant's liability to pay the principal of the debt came into existence at the expiration date of the mortgage. The appellee has done nothing to prejudice the right of the surety to enforce payment of the matured principal debt in the event the surety pays the creditor in full. The fact that the appellee has waived the right to collect the full interest rate *after maturity,* does not operate to relieve the surety from his obligation to pay the principal sum already past due.

The cases cited by appellant in support of her position on this phase of the case are not apposite. In *Jacob Sall B. & L. Assn. v. Heller,* 314 Pa. 237, 171 A. 464, the creditor, instead of standing on its rights after the debt had matured, "proceeded to cure the defaults" and en-

tered into a new agreement with the debtor which substituted a new obligation for the one already matured. This impaired the surety's right of action on the old obligation. In that case this court said: "Appellee argues that it should not be penalized for doing what was helpful to the situation at the time. It is likely that appellant, if confronted with the situation existing upon the default, would have recognized the force of this and would have agreed to the change in the hope that Savitz would work out of his difficulties. In agreeing, however, in effect, to relieve Savitz of his obligation to make payments upon shares in the 32d series and to accept in lieu thereof monthly payments upon different stock, the association departed from the original contract with the result that appellant, as surety, was discharged." In *Bauschard Co. v. Fidelity & Casualty Co.*, 21 Pa. Superior Ct. 370, the creditor granted an extension of time to the principal debtor after the obligation had ripened. This impaired the surety's right of subrogation. Since it had paid the debt after maturity, it could not have promptly proceeded to collect against the debtor. In *Manufacturers' and Mechanics' Bank v. Bank of Penna.*, 7 W. & S. 335, the creditor impaired the surety's right of subrogation by granting a stay of execution to the debtor. In that case Chief Justice GIBSON said: "Where the holder has disabled himself by a binding engagement to give time, it is clear and indisputable law that the endorser is discharged. . . . 'The rule,' says Mr. Chitty, 'is founded on the principle that the holder, by entering into a binding engagement to give time to the acceptor, renders him less active in endeavouring to satisfy the bill than he probably would otherwise be if he continued liable to an immediate action at the suit of the holder.' . . . We must hold that the judgment against Cowden was discharged; for to protect the one without releasing the other would be an injury to the latter by suspending his recourse to the principal, for which he must have a remedy somewhere." In the instant case the action of

the creditor has in no wise prejudiced any of the rights of the surety and therefore the latter has no valid claim for release from his obligation.

Appellant quotes a part of section 123a of Williston on Contracts (Rev. Ed.), sec. 1239, to the effect that "the surety cannot be held according to the terms of the new contract for he never assented to it." Appellant does not, however, quote the sentence from Williston which precedes the sentence first above quoted. This preceding sentence reads as follows: "A change, which is anything more than a mere immaterial one, in the contract agreed upon by creditor and principal without the consent of the surety will discharge the latter from any liability for a subsequent *breach of the altered contract,*" (italics supplied). In the instant case appellee is not attempting to hold appellant "for a *subsequent breach* of the altered contract," but for a *prior* breach of that contract. Section 1254 of Williston on Contracts cited by appellant merely holds that even though a creditor has obtained judgment against the surety the former "must still respect" the latter's rights. In the instant case the surety's rights remain respected and unviolated. The subsequent reduction of the interest rate after the surety's obligation to the creditor was fixed did not impair in the slightest degree any rights that the surety had after he assumed the obligations of suretyship. In section 1240 Williston says: "If a liability for an instalment of a contract has once accrued against the surety, a subsequent variation of the principal's future obligations under the contract will not, as such, discharge him" (citing cases). The respective rights and liabilities of the creditor and the surety having been fixed by the principal's default *before* there was any change made in the interest rate, the post-default alteration in the contract left those rights and liabilities wholly unaffected.

The judgment is affirmed.