Yulsman, Appellant, *v.* DuBois.

Argued January 5, 1943. Before MAXEY, C. J.; DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*Harry C. Liebman,* for appellant.

*Ralph S. Croskey,* of *Croskey & Edwards,* for appellee.

OPINION BY MR. JUSTICE DREW, January 29, 1943:

This bill in equity was filed by Benjamin Yulsman, complainant, for himself and his partnership of Yulsman and DuBois, against his former partner, Leon A. DuBois, respondent, to enjoin the latter from receiving any funds in his individual capacity which are due or may become due as the result of a contract entered into between DuBois and one, George Miller, on or about December 28, 1934, and to compel him to assign that contract to the former partnership. The learned chancellor found in favor of respondent and dismissed the

bill. From the decree of the court affirming the dismissal, complainant took this appeal.

The chancellor made the following findings of fact: "1. On or about April 26, 1923, the parties hereto entered into a verbal agreement of copartnership for the purpose of engaging in the practice of accounting and tax consulting. The profits and losses were to be shared equally. 2. On November 26, 1934, the said partners executed a written memorandum which provided that either partner bringing in new business 'either from a new customer or generating from an old customer' should receive a special 'commission of 20% of the gross income from such business' to 'be made effective as of January 1, 1934'. 3. On or about December 28, 1934, the respondent, acting in behalf of the partnership, entered into a written contract with George Miller which provided that the respondent was to make a survey of Miller's expectant estate, make recommendations to reduce estate taxes, prepare necessary tax returns, submit a calculation showing what the tax would have been had the recommendations not been followed, and received 10% of the saving thus affected for the services rendered . . . 4. George Miller died January 1, 1937. When the contract which was taken in the name of the respondent individually was performed, substantial sums became due for services thus rendered. 5. The fees earned as a result of this contract were the property of the partnership. 6. On May 4, 1936, the partners entered into a written contract under seal, annexing thereto a copy of the Miller contract, and providing that any remuneration received under that contract should be divided in such a manner that 20% of the gross receipts became payable to the respondent as remuneration for obtaining said business and that the balance be divided equally between the partners. This contract is known as the 'division contract'. 7. Some time after June 1, 1936, the partnership was dissolved."

There is no substantial dispute of fact in the case, the differences being of matters which are immaterial to the

determination of the issues raised by the pleadings. The controversy centers about and is determined by the effectiveness of the "division contract". The agreement of May 4, 1936, recites the Miller contract and a dispute concerning the terms under which the partners were to share the profits derived therefrom. It is not denied that the respondent is to receive an overriding commission of 20% on the gross income and that the balance due is to be divided equally between the partners. The complainant contends, however, that the agreement is void and that the entire proceeds must be divided equally between them.

During the course of the trial, counsel for respondent stated that he was not relying upon the written memorandum executed on November 26, 1934. Therefore, it is unnecessary to consider whether the Miller contract constituted new business "generated" from an old customer. The controversy, by exclusion of that memorandum narrows itself into a determination of whether the contract entered into on May 4, 1936, is valid and binding on the parties. Complainant contends there was no consideration for it and that it was executed under duress. The contract is under seal. As we pointed out in *Conrad's Estate*, 333 Pa. 561, 563: "It is well settled that a seal *imports* consideration. This is more than a mere presumption; the seal takes the place of proof of consideration and in the absence of fraud makes the promise enforcible without it. The defense of *want* of consideration is not available in an action on a sealed instrument: *Yard v. Patton*, 13 Pa. 278." See also *Land Title Bk. & Tr. Co. v. Freas*, 334 Pa. 26, 28; *Balliet v. Fetter*, 314 Pa. 284, 288; *Killeen's Estate*, 310 Pa. 182, 187.

The complainant endeavored to make out a case of fraud so as to fall within the exception to the rule stated, but he failed to do so. There is no evidence of fraud in the case. The element of duress is also completely absent. It is stated in complainant's brief that between May of 1935 and May 4, 1936, he continued to demand of re-

spondent that the Miller contract be assigned to the partnership; that several agreements to this effect were prepared by respondent and that complainant prepared one, none of which were satisfactory; and that finally respondent submitted an agreement and threatened the complainant that he "could take it or leave it and unless he signed it he would get nothing", and the complainant then informed respondent that he had no choice in the matter, that he had no way to compel him to assign the Miller contract to the partnership and that then he signed the "Division Contract" under protest. There is no indication of fraud or duress in this. Each partner was fully aware of all the facts. Not an essential detail was kept from either of them. The only threat alleged was that complainant "could take it or leave it and unless he signed it he would get nothing." This was said after a year of negotiating the very matter. Complainant had every opportunity to protect himself and all his rights. "It cannot be said that one is coerced when he has ample opportunity to have his rights litigated and can utilize all the processes of law to protect himself against an unwarranted demand. If, instead of availing himself of such protection, he chooses to compromise the claim, a payment thus made is not compulsory . . .": *Tugboat Indian Co. v. A/S Ivarans Rederi*, 334 Pa. 15, 20. Furthermore, as we said in *Miller v. Miller*, 68 Pa. 486, 493: "The constraint which takes away free agency and destroys the power of withholding assent to a contract, must be one which is imminent, and without immediate means of prevention . . ."

We agree with the learned chancellor's summation, approved by the court below, that the contract of May 4, 1936, ". . . was solemnly executed by the parties under seal for the purpose of preventing that which is now before us. Our courts have repeatedly announced the policy of upholding the integrity of written instruments. They cannot be brushed aside without cause . . . This litigation was settled once before without the intervention of

this court on May 4, 1936. No thinly veiled theories of the presence of duress and the absence of consideration can change that fact."

Decree affirmed.