### Miller v. Miller

*Lynne Gold-Bilkin,* for plaintiff.
*Robert Katzenstein,* for defendant.

TRESSLER, *J.,* August 16, 1993—The instant case concerns an appeal from the order of this court dated June 15, 1993. Said order granted wife's amended petition to enforce separation agreement and denied husband's petition to rescind property settlement agreement. This case presents the simple issue of whether a threat of criminal prosecution constitutes duress and renders a settlement agreement between husband and wife void. Husband's attorney acknowledges that existing case law upholds the validity of the agreement under these facts, but urges the court to broaden the scope of the defense of duress. (N.T. 104-07.) This court declines to flout well-settled precedent and has affirmed the validity of the agreement for the reasons below.

## FACTS

Husband and wife separated in 1987. (N.T. 67.) At that time, husband faced charges in the Philadelphia Municipal Court of indecent assault and indecent exposure. (N.T. 67-69.) Husband was represented by counsel for those charges. (N.T. 68.) Also during that time, husband and wife were negotiating the aforementioned separation agreement. (N.T. 70.) Husband was represented by counsel in this negotiation. (N.T. 76-77.)

Wife disagrees with husband's testimony regarding the events that transpired during the negotiation. (N.T. 108-111.) The court makes no factual findings regarding the difference in testimony by the witnesses. Instead, the ar-

gument below will show that even if husband's account is correct, he nonetheless fails to establish duress.

Husband claims that wife threatened in early December 1987, to report to the district attorney that husband had wife raped in 1984, unless he agreed to the terms she proposed. (N.T. 74-75.) Husband claims that on three occasions he spoke to wife and asked her to drop her threat and reduce the amount of alimony she sought, but she refused. (N.T. 76.) Husband also instructed his attorney in the divorce action to negotiate more advantageous terms for the separation agreement. (N.T. 76-77.) He testified, however, that he never sought advice from his counsel in the criminal case, because he "was too scared to talk to anybody about it." (N.T. 98.) Husband is, and was at that time, a medical doctor, and feared such a disclosure by wife would cause him to serve time in jail and lose his license to practice medicine. (N.T. 85.)

Husband and wife entered the agreement on February 12, 1988, settling various claims as to rights regarding property, testamentary claims, support, debts and custody and support of the couple's children. At the time of signing, husband was 37 years old and in good physical health.

The agreement, signed and notarized, reads, in pertinent part:

### "THIRD: LEGAL ADVICE

"The provisions of this agreement and their legal effects have been fully explained to the parties by their respective counsel. The wife has employed and had the benefit of counsel of Lynne Z. Gold-Bikin, Esquire, as her attorney. The husband has employed and had the benefit of counsel of Frederick Cohen, Esquire,

as his attorney. Each party acknowledges that he or she has received independent, legal advice from counsel of his or her selection and that each fully understands the facts and has been fully informed as to his or her legal rights and obligations and each party acknowledges and accepts that this agreement is, in the circumstances, fair and equitable, and that it is being entered into freely and voluntarily after having received such advice and with such knowledge, and that execution of this agreement is not the result of any duress or undue influence and that it is not the result of any collusion or improper or illegal agreement or agreements. The parties acknowledge that each has been fully informed of the wealth, property, estate and income of the other and this agreement is made in reliance on the disclosures previously made."

## DISCUSSION

Husband's concise statement of matters raised on appeal raises only two issues: whether husband executed the agreement under duress, and whether husband was under such duress while negotiating and signing the agreement as to render it void. The court notes that the first issue is subsumed under the second, as execution of a contract is necessarily included in negotiating and signing. Therefore, only the second issue need be addressed in order to resolve both.

Agreements not merged into a divorce decree survive divorce actions as enforceable contracts. *Nessa v. Nessa,* 399 Pa. Super. 59, 63-64, 581 A.2d 674, 676 (1990). As such, they are governed by principles of contract law. *Id.* at 64, 581 A.2d at 676. The agreement in the instant case, at page 22, contained a specific provision for incorporation and not merger, and therefore survived as a contract. *Id.* at 64-65, 581 A.2d at 676. Conse-

quently, the court must apply contract principles in determining its validity.

"Absent fraud, misrepresentation, or duress, spouses should be bound by the terms of their agreements." *McMahon v. McMahon,* 417 Pa. Super. 592, 599, 612 A.2d 1360, 1363 (1992). The Pennsylvania Supreme Court defines duress as

"[t]hat degree of restraint or danger, either actually inflicted or threatened and impending, which is sufficient in severity or apprehension to overcome the mind of a person of ordinary firmness....The quality of firmness is assumed to exist in every person competent to contract unless it appears that by reason of old age or other sufficient cause he is weak or infirm ...." *Carrier v. William Penn Broadcasting Co.,* 426 Pa. 427, 431, 233 A.2d 519, 521 (1967). (citation omitted)

Since husband testified he was neither old nor physically infirm at the time he negotiated the agreement, resolution of the issue turns on whether wife's alleged threat of reporting a criminal act can constitute duress under the instant facts.

"[I]n the absence of threats of actual bodily harm there can be no duress where the contracting party is free to consult with counsel...." *Carrier, supra* at 431, 233 A.2d at 521. (citation omitted) Husband testified he did in fact consult with counsel regarding the negotiation of the settlement agreement, and that he chose not to disclose the alleged threat to his counsel in the criminal proceeding. Therefore, as a matter of law, duress is not present in the instant case.

Similarly, "[t]he constraint which takes away free agency and destroys the power of withholding assent to a contract, must be one which is imminent, and without immediate means of prevention...." *Yulsman v. DuBois,* 346 Pa. 310, 313, 30 A.2d 323, 325 (1943). (citation omitted) In *Yulsman,* plaintiff challenged the validity of a contract on the grounds of duress. *Id.* at 312, 30 A.2d at 324. As plaintiff had had a year to negotiate the contract, the Supreme Court held that the element of duress was "completely absent." *Id.* at 312-13, 30 A.2d at 324. In the instant case, wife allegedly made her threat in early December 1987, and husband signed the agreement in early February 1988. Husband had approximately two months to negotiate the alleged threat with wife or discuss it with counsel. Therefore, the harm alleged can hardly be described as "imminent."

Based on the reasoning above, this court concludes husband did not enter the settlement agreement under duress and finds the resulting contract valid.